

Joshua L. Raskin
Tel 212.801.9200
Fax 212.801.6400
raskinj@gtlaw.com

January 15, 2020

**VIA ECF**

The Honorable Joan M. Azrack
U.S. District Court, E.D. New York
Long Island Courthouse
100 Federal Plaza,
Central Islip, NY 11722

      Re: *Signify North America Corporation et al., v. Satco Products, Inc.*, 2:19-cv-06125-JMA-SIL

Dear Judge Azrack:

Satco Products, Inc. ("Satco") respectfully submits this response to the January 2, 2020 letter submitted by Signify North America Corporation and Signify Holding B.V. (collectively, "Signify") regarding a proposed motion under Fed. R. Civ. P. 12(c) to dismiss Satco's patent misuse and inequitable conduct affirmative defenses and counterclaims (Dkt. No. 22) ("Request"). For at least the reasons discussed below, Signify should not be permitted to bring its motion as such a motion would be futile.

### I. Legal Standard for a Rule 12(c) Motion

The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that under Rule 12(b)(6). *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). Courts must accept all factual allegations as true and draw all inferences in the non-movant's favor, as such motions "assess the sufficiency of [pleading], not the sufficiency of [] evidence." *Schine v. N.Y. State Office for Developmental Disabilities*, 2017 U.S. Dist. LEXIS 2362, at *10 (E.D.N.Y. Jan. 5, 2017). A Rule 12(c) motion should be granted only if the non-movant's allegations fail to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In fact, the pleading standard for an affirmative defense is even more relaxed. *See*, *e.g.*, *GEOMC Co. Ltd. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019) ("the facts needed to plead [an affirmative defense] . . . may not be readily known to the defendant, a circumstance warranting a relaxed application of the plausibility standard.").

### II. Satco Has Adequately Pleaded a Claim for Patent Misuse

Signify makes two arguments to support its position regarding patent misuse: (1) that a patent misuse defense cannot be supported by an allegation that the patentee has asserted patents that it knows to be invalid and/or not infringed (*see* Req. at 2); and (2) Satco failed to plead anticompetitive effects in a relevant market. *Id*. Signify is incorrect on both counts.

Regarding Signify's first argument, Signify suggests that the only basis for Satco's patent misuse defense is the bad faith assertion by Signify of patents it knows to be invalid against products it knows do not infringe. *See* Req. at 2. That is not true. Rather, Satco includes numerous other allegations supporting its patent misuse defense. For example, and without limitation, Satco alleges that, because "almost one

fifth [of the patents available on Signify's website] were expired," Signify has been "engag[ing] in an aggressive licensing program" under which it "demands licensing fees and licensing terms that far exceed any reasonable royalties it could recover under U.S. patent laws." Answer at ¶¶ 160, 164, 168. Allegations such as those have been found by the Federal Circuit to constitute patent misuse. *See Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997) (Patent misuse includes "arrangements in which a patentee effectively extends the term of its patent by requiring post-expiration royalties").

In addition, even if bad faith enforcement was the only basis for Satco's patent misuse defense—it is not—this Court has expressly held that, "[i]f a patentee knows his patent will not survive a validity challenge—for whatever reason—and nevertheless uses it to leverage licenses under threat or actual use of cripplingly expensive litigation, then that may constitute patent misuse." *Leviton Mfg. Co. v. Pass & Seymour, Inc.*, 264 F. Supp. 3d 421, 428 (E.D.N.Y. 2017). Thus, Satco's allegations that (a) "Signify has engaged in an aggressive licensing program to coerce licensing of the patents in suit . . . whether or not the patents are valid" (Answer at ¶ 160); (b) Signify knows that certain of the asserted patents are invalid because, for example, "foreign counterparts of some of the [asserted patents] have been revoked" (*id.* at ¶¶ 168-69); and (c) Signify is enforcing patents against products that it knows are not infringing as the ITC has already concluded that Satco's products do not infringe two of the asserted patents (*id.* at ¶¶ 169-170), when accepted as true, constitute patent misuse.

The cases cited by Signify—which predate the *Leviton* case discussed above—are distinguishable. In *C.R. Bard, Inc. v. M3 Sys.*, the Court considered whether evidence presented *at trial*—not at the pleadings stage—was sufficient to support a jury verdict and found that the defendant "adduced no evidence of patent misuse other than was [sic] presented for its antitrust claims." 157 F.3d 1340, 1372 (Fed. Cir. 1998). And, the *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.* case supports Satco since the Court acknowledged that the "collection of royalties after patent expiration" is "a clear misuse of the patent grant." 2006 WL 3342655, at *9 (S.D.N.Y. Nov. 16, 2006) (citing *Brulotte v. Thys Co.*, 379 U.S. 29, 85 (1964)).

Regarding Signify's second argument, Signify suggests that Satco makes only "conclusory references" to the anticompetitive effect of Signify's improper activities. *See* Req. at 2. Signify is wrong again. To the contrary, Satco alleges that Signify "is a multinational company, with billions in revenue . . . [and] competes with Satco and other lighting fixture suppliers." Answer at ¶¶ 158-59. Satco also alleges that Signify "us[es] its marketplace power . . . to leverage the licensing of [its] patents whether or not the patents are valid and whether or not the products to be licensed are within the scope of the claims of the patents in suit." *Id*. at ¶ 160. Further, Satco alleges that Signify has "brought numerous suits against lighting fixture manufacturers . . . because sales prices and revenues from final LED lighting fixture products are higher than sales prices and revenues of components . . . and because lighting fixture suppliers are mostly smaller companies which cannot easily afford litigation." *Id.* at ¶¶ 161-63. Moreover, Satco alleges that Signify uses its marketplace power to extracts royalties from expired, invalid and/or non-infringed patents that are bundled in its licensing program. *Id*. at ¶¶ 160, 164-68. These allegations—which go unmentioned in Signify's Request—are clearly sufficient to demonstrate the plausibility of Signify's monopoly power within the lighting fixtures market and how Signify's actions "impermissibly broaden[ed] the scope of patents and patent rights with anticompetitive effect." *Id*. at ¶ 164.

Once again, the cases cited by Signify are easily distinguishable. In *Seaboard Int'l, Inc. v. Cameron Int'l Corp.*, the Court dismissed a patent misuse defense because the alleged conduct could only cause "injury to a single individual or individual firm." 2013 U.S. Dist. LEXIS 106784, at *9 (E.D. Cal. July 30,

2013). In contrast, Satco has alleged that numerous lighting fixture suppliers and manufacturers have suffered due to Signify's anticompetitive acts. Answer at ¶¶ 161-64, 166-67. In *Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*, the court dismissed a patent misuse defense which parroted the elements of the defense "without alleging even general facts." 2004 U.S. Dist. LEXIS 16584, at *5 (S.D.N.Y. Aug. 19, 2004). And in *Certain LED Lighting Devices, LED Power Suppliers, and Components Thereof*, the ITC struck patent misuse allegations where "the entirety of the information" provided in support of the defense spanned a single sentence. Inv. No. 337-TA-1081, Order 27 at 13-14 (USITC, Feb. 20, 2018).

### III. Satco Has Adequately Pleaded a Claim for Inequitable Conduct

Signify makes two arguments to support its position regarding inequitable conduct: (1) Satco has not pleaded with the requisite specificity why PCT Int'l Pub. No. WO 99/31560 ("Mueller") is material or how an examiner would have used Mueller (*see* Req. at 3); and (2) Mueller would have been cumulative in view of related patents that were submitted to the PTO. *Id*. Signify is again incorrect on both counts.

Regarding Signify's first argument, Signify seems to argue that Mueller cannot be material since it does not "state verbatim" the "actual terms from the cited claims." *See* Req. at 3. But, to support a claim of materiality, allegations of "verbatim" disclosure of the claim terms are not necessary. Rather, all that is necessary is to "explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information." *Datascape, Ltd. v. Dell Techs., Inc.*, 2019 U.S. Dist. LEXIS 182810, at *8-9 (W.D. Tex. June 17, 2019). And Satco has done just that. Specifically, Satco has cited to specific figures and pages of Mueller which satisfy the limitations of at least claim 1 of the '138 patent. *See* Answer at ¶¶ 180-81. Moreover, Satco demonstrated how the examiner would have used Mueller since the portions of Mueller identified by Satco satisfy the very claim limitation which both the applicant and examiner contended were missing from the prior art. *Id*. Such allegations make this case different from the *Lexington Luminance LLC v. Osram Sylvania Inc.* case cited by Signify since, in that case, the defendants did not identify any significant relationship between the asserted patent and the withheld prior art but referred, in a conclusory manner, to one figure as containing the purportedly material information. 972 F. Supp. 2d 88, 92 (D. Mass. 2013).

Regarding Signify's second argument, Signify contends that Mueller is cumulative since "Satco admits that 'issued patents from the same family as [Mueller] were disclosed . . . by the Applicant.'" *See* Req. at 3. However, Satco alleges that "those patents were buried in over 400 other references cited." Answer at ¶ 182. Thus, unlike in the *Medisim* case cited by Signify, there is no indication that any of the (buried) related patents were considered by the examiner. Indeed, it has been held that burying material prior art amongst a multitude of references can itself be a basis for inequitable conduct because "it is possible that the examiner did not give detailed attention to [the buried] reference, and may have reached a different conclusion if the reference was more prominently brought to his attention." *See Coolsystems Inc v. Nice Recovery Sys. LLC*, 2016 WL 6091577, at *4 (N.D. Cal. Oct. 19, 2016). In addition, Satco alleged that the related patents "would have been easily overlooked" amongst the other over 400 references because, unlike Mueller, they were not prior art under 35 U.S.C. § 102(b). Answer at ¶ 182. In contrast, "a reasonable examiner would have considered the existence of a possible statutory bar [under 35 U.S.C. § 102(b)] important in determining whether the application should issue. *C.f. Jack Frost Labs. v. Physicians & Nurses Mfg. Corp.*, 1997 U.S. App. LEXIS 26138, at *16-17 (Fed. Cir. Sept. 23, 1997).

Accordingly, for the foregoing reasons, Satco respectfully requests that the Court deny Signify's Request to bring its proposed motion to dismiss.

        Respectfully submitted,

        */s/ Joshua L. Raskin*
        Scott J. Bornstein
        Joshua L. Raskin
        Julie P. Bookbinder
        GREENBERG TAURIG, LLP
        200 Park Ave
        New York, NY 10166
        Telephone: (202) 801-9200
        bornsteins@gtlaw.com
        raskinj@gtlaw.com
        bookbinderj@gtlaw.com

        Nicholas A. Brown (*admitted pro hac vice*)
        GREENBERG TRAURIG, LLP
        4 Embarcadero Ctr, Ste. 3000
        San Francisco, CA 94111-5983
        Telephone: (415) 655-1271
        brownn@gtlaw.com

        Robert P. Lynn, Jr.
        Stephen W. Livingston
        LYNN GARTNER DUNNE, LLP
        330 Old Country Road, Suite 103
        Mineola, New York 11501
        Telephone: (516) 742-6200
        rplynn@lgdlaw.com
        swlivingston@lgdlaw.com

        ***Attorneys for Defendant Satco Products, Inc.***