IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIGNIFY NORTH AMERICA CORPORATION and SIGNIFY HOLDING B.V.<br><br>Plaintiffs,<br><br>v.<br><br>SATCO PRODUCTS, INC.<br><br>Defendant. | Civil Action No. 2:19-cv-06125-JMA-SIL |

# [PROPOSED] ORDER REGARDING E-DISCOVERY

The Court ORDERS as follows:

1. This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure

2. This Order may be modified in the Court's discretion or by stipulation.

3. As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

4. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

5. This Order does not apply to documents produced in the prior litigation between the parties, *i.e.*, *Certain LED Lighting Devices, LED Power Supplies, and Components Thereof*, Inv. No. 337-TA-1081, Order No. 27 (USITC, Feb. 20, 2018) (the "1081 Investigation"). Documents that were produced in the 1081 Investigation may be

produced with the same ESI and production numbers that were previously used in the 1081 Investigation.

6. **Production Format of ESI** - For documents originating in electronic format (except for document types for which the specifications below are inapplicable, infeasible, or unduly burdensome), the parties agree to exchange DAT files containing unique field delimiters and, to the extent known, the following fields:

    A.    All Documents:

        i.    Custodian.

        ii.    Beginning Production Number;

        iii.    Ending Production Number;

        iv.    Beginning Group Range (if applicable);

        v.    Ending Group Range (if applicable);

        vi.    Group identifier;

        vii.    Date;

        viii.    OCR text (pointing to the .txt file link only) and

        ix.    MD5 Hash.

    B.    Edocs:

        i.    Fields A.i. – A.viii above;

        ii.    Folder Path; and

        iii.    Filename.

    C.    Email:

        i.    Fields A.i. – A.viii above;

        ii.    To:;

    iii. Cc:;

    iv. Bcc:;

    v. Subject:; and

    vi. Attachment(s).

  To the extent that documents have been produced prior to the effective date of this order without the above fields, the party should produce a .dat file for all documents containing the required metadata fields.

  D. The corresponding images in single-page TIFF format for images produced in black and white, and JPEG format for images produced in grayscale or color; however, if such images cannot be produced legibly in TIFF or JPEG format, they will be produced in high resolution PDF format, unless the producing party elects to produce the document(s) solely in native format pursuant to paragraph 6.F below;

  E. Parent documents with attachments, enclosures, and/or exhibits should be produced in the form in which they are kept.

  F. For good cause, a party that receives a document produced in a format specified in Paragraph 6.B may make a reasonable request to have the document reproduced in its native format. Upon the showing of good cause, the producing party shall reproduce the document in its native format. All Excel files shall be produced in native form without a need for a specific request.

  G. Documents originating in electronic format (including but not limited to Excel files, and media files) that are produced in native format shall be labeled with a unique production number and produced with a slipsheet indicating that the

document was produced in native format and containing the appropriate confidentiality designation.

7. **Production Format of Documents Stored in Paper Form** –

A. For documents originating in paper form, the parties agree to scan such documents and exchange:

i. DAT files containing unique field delimiters and the following fields:

ii. Beginning Production Number; and

iii. Ending Production Number;

iv. Custodian

v. The corresponding scanned images in single-page TIFF format for images produced in black and white, and JPEG format for images produced in grayscale or color; however, if such images cannot be produced legibly in TIFF or JPEG format, they will be produced in high resolution PDF format.; and

vi. OCR text.

B. <u>Unitization</u>. In scanning documents originating in paper format, distinct documents will not be merged into a single record, and single documents will not be split into multiple records (i.e., paper documents will be logically unitized). The parties will commit to re-unitize improperly unitized documents to reflect the manner in which the documents were maintained.

C. <u>Parent-Child Relationships</u>. Parent-child relationships (e.g., the association between a paper format letter and its enclosure) must be preserved in such a

way that the paper document and any attachments to that paper documents are produced in the same production set and are identifiable.

    D. <u>Preservation of Filing and Other Information</u>.  Images of all file labels, file headings, and file folders associated with documents originating in paper format will be produced along with those documents.

  8. **No Backup Restoration Required**. Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN and other forms of media, to comply with its discovery obligations in the present case.

  9. **Voicemail and Mobile Devices**. Absent a showing of good cause, voicemails, PDAs, mobile phones, text messages, instant messages and chats are deemed not reasonably accessible and need not be collected and preserved.

  10. **Production Media**.  Documents shall be produced on external hard drives, CDs, or DVDs; production by FTP or email rather than on hard media will be acceptable. Each piece of production media should identify: (1) the producing party's name; (2) the production date; and (3) the Bates-number range of the materials contained on the production media. The parties may provide encrypted media for production.

  11. **Confidentiality Designation**. Responsive documents in TIFF or PDF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. All material not reduced to documentary, tangible, or physical form or which cannot be conveniently labeled, shall be designated by the producing party by informing the receiving party of the designation in writing.  For documents produced in native format, the confidentiality designation shall be included both

in the slipsheet file indicating that the file was produced natively and in the filename of the native file.

12. **Redaction of Information**. Redacted documents and redacted portions of documents shall be made with readily visible redactions (*i.e.*, blackout) and are subject to the parties' agreement in the Discovery Order regarding whether certain documents need to be included in a privilege log. The producing party shall retain a copy of the unredacted data within its possession and control and preserve it without modification, alteration, or addition to the metadata therewith. Redacted documents must be produced text but may include OCR text in lieu of extracted text.

13. **Email**

   A. General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email parties must propound specific email production requests.

   B. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

   C. Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, the relevant finances, and a specific identification of likely email custodians. The court may allow additional discovery upon a showing of good cause.

D.　Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe.

E.　Each requesting party shall limit its email production requests to a total of five custodians, from the list of likely email custodians, per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

F.　Each requesting party shall limit its email production requests to a total of five search terms per custodian per party plus additional searches for each asserted patent number per custodian. The parties may jointly agree to modify this limit without the Court's leave.  The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The Court encourages the parties to confer on a process to test the efficacy of the search terms. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and,"

"but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Notwithstanding the foregoing, searches for each asserted patent number per custodian, whether in conjunctive or disjunctive combination, shall not be limiting or counted towards the five search terms. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

    G. Nothing in this Order prevents a party from voluntarily producing the e-mails of its own custodians. A party's voluntary production of e-mail from a custodian shall not operate as a waiver of any of the limitations on e-mail discovery set forth in this Order.

    H. To the extent e-mail is produced attachments should additionally be produced with attachments immediately following their respective parent e-mail and the entire production range for the e-mail and its respective attachments also provided (*e.g.*, Beginning Group Range and Ending Group Range metadata fields populated) to the extent reasonably practical to do so.

  14. Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery.

  15. Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

16. The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

17. Except as expressly stated, nothing in this order affects the parties' discovery obligations under the Federal or Local Rules.

**Signed this __ day of January, 2020**  _____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE