# ALSTON & BIRD

The Atlantic Building
950 F Street, NW
Washington, DC 20004-1404
202-239-3300 | Fax: 202-239-3333

Thomas W Davison  Direct Dial: 202-239-3933  Email: tom.davison@alston.com

<u>VIA CM/ECF</u>  February 17, 2020

The Honorable Stephen I. Locke
United States District Court for the Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, NY 11722

Re: *Signify North America Corporation et al., v. Satco Products, Inc.*, Case No. 2:19-cv-06125-JMA-SIL

Dear Judge Locke:

Pursuant to a conference call with chambers on February 6, 2020, Plaintiffs Signify North America Corporation and Signify Holding B.V. (collectively, "Signify") and Defendant Satco Products, Inc. ("Satco") move the Court for entry of a disputed protective order. Signify's proposed protective order is attached as Exhibit 1, Satco's proposed protective order is attached as Exhibit 2, and a redline showing the differences is attached as Exhibit 3. The Parties have met and conferred numerous times regarding the protective order but have been unable to reach an agreement regarding two issues. These issues and the Parties' positions are summarized below.

## I.   Signify Requests that the Court Prohibit Competitive Decision Makers From Accessing All Documents Produced in this Litigation

### A.   Signify's Position

The Parties dispute whether non-attorney employees of Satco with decision making authority should have access to ***all*** documents produced in this litigation. For example, Satco requests that non-attorneys with decision making authority have access to: (i) licenses that Signify has entered into with companies that compete with Satco and (ii) documents regarding Signify products that directly compete with Satco products. Signify proposes an attorneys' eyes only provision because "courts utilize attorneys' eyes only protective orders when especially sensitive information is at issue or the information is to be provided to a competitor." *Westbrook v. Charlie Sciara & Son Produce Co.*, No. 07-2657 Ma/P, 2008 U.S. Dist. LEXIS 24649, 2008 WL 839745 (W.D. Tenn. Mar. 27, 2008).

The determination for denial of access under a protective order turns on the extent to which the person to whom the information is disclosed is involved in "competitive decision making" (*e.g.*, decisions regarding pricing, product design, etc.) with the client. *United States Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). "In a particular case, *e.g.*, where corporate employees are involved in competitive decision-making, it may well be that a party seeking access

Alston & Bird LLP  www.alston.com

Atlanta | Beijing | Brussels | Charlotte | Dallas | Los Angeles | New York | Raleigh | San Francisco | Silicon Valley | Washington, D.C.

should be forced to retain outside counsel or be denied the access recognized as needed." *Hitkansut LLC v. United States*, 111 Fed. Cl. 228, 239 (Fed. Cl. 2013) (internal citations omitted).

Here Satco has requested that competitive decision makers such as its President (William Gildin), Senior Vice President for Product Development and Marketing (Brian Brandes), and Vice President for Product Development (Chris Siegal) be allowed to see **all** confidential information. Courts routinely prohibit individuals such as those proposed by Satco from accessing **all** confidential information. *Ross—Hime Designs, Inc. v. United States*, 109 Fed. Cl. 725, 742-44 (Fed. Cl. 2013) (denying access of confidential information to plaintiff's president who was likely to be involved in competitive decision-making); *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 299 F.R.D. 498, 499 (W.D. Va. 2014) (denying competitive decision-makers such as the president, owner, and chief operating officer access to confidential information); *Tailored Lighting, Inc. v. Osram Sylvania Prods., Inc.*, 236 F.R.D. 146, 147-48 (W.D.N.Y. 2006) (denying president access to confidential information because it would be "unreasonable to expect that anyone working to further his own scientific and technological interests would be able assuredly to avoid even the subconscious use of confidential information revealed through discovery that is relevant to those interests.").

Satco's non-attorney competitive decision makers should not have access to license agreements that Signify has entered into with third parties. For example, Satco has requested the production of license agreements that Signify has entered into with companies that directly compete with Satco, such as Eiko Global, LLC, Bulbrite Industries, Inc., and Halco Lighting Technologies. Ex. 4 at 15-16 (Requests Nos. 46-51). Allowing Satco decision makers to access to these confidential license agreements would provide Satco with an unfair competitive advantage. Courts have recognized that Attorneys' Eyes Only provisions are appropriate for license agreements such as these. *Cabell v. Zorro Prods.*, No. 15-cv-00771-EJD (HRL), 2017 U.S. Dist. LEXIS 103749, at *3-4 (N.D. Cal. July 5, 2017).

Additionally, Signify and Satco sell numerous products that directly compete. Satco has requested the production of numerous categories of confidential technical documents, such as specifications, design documents, and schematics, related to Signify products that compete with Satco products. *See* Ex. 4 at 12-13 (Request Nos. 23-26). Further, Satco has requested the production of confidential financial documents related to Signify products that compete with Satco products such as "all […] notes from sales meetings," "[all] contracts," and "all sales records […], monthly and year-end by customer, by region, and by product." *Id*. at 14-15 (Request Nos. 37, 39). If Satco decision makers are provided with access to these documents, then the potential for abuse and competitive loss is real.

The disclosure of highly confidential information regarding third party license agreements and the technical and financial aspects of Signify's products cannot later be removed from the thought process of Satco's competitive decision-makers as they manage Satco's business operations. *Hitkansut LLC*, 111 Fed. Cl. 239 ("[T]he fallibility of the human brain is paramount. It is simply impossible for a human being to segregate, or 'unlearn,' certain pieces of knowledge."). Once Satco's competitive decision makers have access to this information they will necessarily use it as they design Satco's products and develop Satco's sales strategies. Moreover, Satco's "proposed non-attorney designees are not officers of the court, are not bound by the same Code of

Professional Responsibility, and are not subject to the same sanctions. They cannot be disbarred or disciplined in the same way, and therefore they do not face similarly serious consequences for breach of the protective order." *Allergan, Inc. v. Teva Pharm. USA*, No. 2:15-cv-1455-WCB, 2017 U.S. Dist. LEXIS 27549, at *15-16 (E.D. Tex. Feb. 28, 2017).

Satco will not be "unfairly disadvantaged if non-attorney staff, who lack the same professional obligations and are more likely involved in competitive decision-making, are prohibited from accessing such information." *Id.* at *23 (internal citations omitted). Satco may assess the merits of the litigation and develop strategy using litigation counsel and outside experts to review information marked RESTRICTED - ATTORNEYS' EYES ONLY, and present it in a non-confidential manner to Satco for decision-making purposes. *See R.R. Donnelley*, No. No. 06-032, 2007 U.S. Dist. LEXIS 424, 2007 WL 61885, at *1 (D. Del. 2007) ("The risk of inadvertent disclosure cannot be overcome by the mere contention that access to confidential information is necessary for case management.").

### B. Satco's position

Signify seeks to prevent Satco employees who are uniquely qualified to evaluate the merits and value of this litigation from accessing discovery necessary to defend Satco's interests in this matter. Specifically, Signify contends that Satco's CEO and two key Satco employees should not be permitted access to Signify's licensing agreements.[1] However, Signify has failed to meet its burden to prove that the disclosure of such information would inflict a clearly defined and serious injury on Signify. Further, if any harm exists—it does not—it is outweighed by Satco's need for the information. Satco is a small company, and it has no legal department. Satco's CEO needs access to the licensing information to be able to effectively evaluate the litigation, particularly Satco's patent misuse claim and Signify's damages claim, as well as to evaluate any possibility of settlement. Moreover, the licensing information is likely to be used at trial, which means that Satco's CEO will see it eventually. For these and the other reasons discussed below, Satco respectfully submits that Signify's request should be denied, and Satco's proposed protective order should be adopted.

<u>Signify Has Not Met Its Burden</u>

"The party seeking a protective order has the burden of showing that good cause exists for issuance of that order." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004) (internal quotations omitted). To establish good cause, the moving party must make a particular and specific demonstration of fact that it will be harmed by disclosing information it believes to be confidential. *Havens v. Metropolitan Life Ins. Co. (In re Akron Beacon Journal)*, 1995 U.S. Dist. LEXIS 5183, at *11 (S.D.N.Y. April 20, 1995). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy [the moving party's burden]." *Sharpe v. Cty. of Nassau*, No. 15-6446 (ADS) (AYS), 2016 U.S. Dist. LEXIS 175169, at *4 (E.D.N.Y. Dec. 19, 2016) (quoting *Rofail v. United States*, 227 F.R.D. 53, 54 (E.D.N.Y. 2005)).

---

[1] Satco does not seek to disclose "confidential technical documents, such as specifications, design documents, and schematics" to its employees.

Initially, Signify does not dispute that the information it seeks to shield from Satco's three identified representatives is highly relevant to this case. Indeed, information about Signify's licensing agreements is potentially the most relevant information in this case for Satco's patent misuse claim and for Signify's damages claims. Nevertheless, Signify asserts that the fact that those employees could be considered competitive decision-makers alone prevents them from accessing such information. Signify is mistaken. Contrary to Signify's position, competitive decision-makers should not be prevented from receiving another party's confidential information unless the moving party can show that disclosure would cause a specific harm. *See Havens*, 1995 U.S. Dist. LEXIS 5183, at *11. Signify has not met and cannot meet that high burden. Specifically, Signify has not demonstrated that that the disclosure of its licenses to Satco's three representatives would cause it any harm, let alone provided any specific facts required to assess the supposed harm. Absent a particularized showing of harm, courts have routinely permitted competitive decision-makers to access an opposing party's agreements and confidential information. *See, e.g.*, *Alarmax Distribs. v. Honeywell Int'l, Inc.*, 2015 U.S. Dist. LEXIS 179636, at *4-8 (W.D. Pa. Oct. 28, 2015) (permitting the president of a company access to agreements with non-parties); *THK America, Inc. v. Nippon Seiko K.K.*, 141 F.R.D. 461, 462 (N.D. Ill. 1991) (rejecting proposal to prevent disclosure of sensitive information to plaintiff's president); *Gyro-Trac Corp. v. Vermeer Mfg. Co.*, 2012 U.S. Dist. LEXIS 198666, at *2-3 (D.S.C. Aug. 21, 2012) (allowing a company owner access to a competitor's sensitive business information, including marketing and business plans).

With respect to licenses, Signify has not identified which, if any, portions of these agreements are confidential. This is important because Signify has publicly disclosed its general licensing strategy and the initial licensing rates offered to prospective licensees for over a decade.[2] Instead, Signify vaguely asserts that disclosing the licenses would give Satco a "competitive advantage" against its licensees and allow Satco to "develop sales strategies." Such non-specific, theoretical assertions of harm are insufficient to meet Signify's burden. *See, e.g.*, *Alarmax*, 2015 U.S. Dist. LEXIS 179636, at *4-8 (assertions that "[the discovering party] would gain important insight into [the moving party's] long term plans … business [] and potentially could use [this] knowledge to injure [the moving party's] future business prospects" and that "release of proprietary information … would severely undercut [the moving party's] initiative in marketing and client development" do not clearly define an injury); *Sprinturf, Inc. v. Southwest Recreational Indus., Inc.*, 216 F.R.D. 320, 324-25 (E.D. Pa. 2003) (holding generalized conclusions of harm to a non-party failed to demonstrate specific injury necessary to show good cause).

Satco does not compete with Signify in the licensing space. When, as here, the potential disclosure of information is not between direct competitors, the risk of harm is more remote and favors disclosure. *See Sadofsky v. Fiesta Products, LLC*, 2008 WL 11420051, at *2 (E.D.N.Y. 2008) (denying protective order where parties were not direct competitors); *Rywkin v. New York*

---

[2] *See* https://www.ledsmagazine.com/home/article/16698014/philips-introduces-licensing-program-for-ledbased-luminaires (July 2008 publication); https://www.assets.signify.com/is/content/PhilipsLighting/Assets/signify/global/20200113-enabled-presentation.pdf (January 2020 presentation)

*Blood Ctr.*, 1998 WL 556158, at *5 (S.D.N.Y. Aug. 31, 1998) (noting that "courts often require disclosure of trade secrets even in litigation with competitors" even though "[c]ourts presume that disclosure to a competitor is more harmful than disclosure to a noncompetitor"). Moreover, Satco is a reseller of lighting products—it does not independently design, develop or manufacture products, as Signify is fully aware. Even inadvertently, the identified Satco employees would not be able to use *licensing* information obtained through this lawsuit in the *design* of Satco's products. Accordingly, Signify has not established that it would be harmed by the disclosure of the licensing information.

<u>Satco's Need For Access Outweighs Potential Harm To Signify</u>

Even if Signify could establish good cause (which it cannot), the minimal risk and potential harm of inadvertent disclosure do not outweigh the prejudice to Satco if its three employees are denied access to this relevant information. The potential harm from inadvertent disclosure turns on the degree of sensitivity of the information at issue and the extent to which it could be misused by a competitor. *See, e.g.*, *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1991). Here, Signify's general licensing strategy and initial licensing rates are publicly available. Thus, much of the licensing information it seeks to shield cannot be considered so sensitive as to merit attorneys' eyes only confidentiality.

Further, because licensing information is important evidence for both the patent misuse claim and Signify's damages claim, it is almost certain to be presented at trial by both Signify and Satco. Thus, Satco's CEO will ultimately have access to this information at least by the time of the trial. *See, e.g.*, *Standard Space Platforms Corp. v. U.S.*, 35 Fed. Cl. 505, 509 (Fed. Cl. 1996) ("[T]o deny plaintiff the right to have its own president assist in its litigation, given defendant's flimsy showing, could well border on a denial of due process."); *Martinez v. City of Ogden*, 2009 WL 424785, at *3 (D. Utah Feb. 18, 2009) ("Restrictions on a litigant's access to information that may constitute or lead to evidence and arguments may severely hamper the litigant's participation."). It does not make sense to restrict Satco's ability to evaluate its position and prepare its case in order to delay disclosure of information that will eventually be presented at trial.

Finally, the licensing information Signify intends to shield is critical to Satco's claims. Satco has no legal department, and the three Satco representatives' experience in this industry and familiarity with Satco's business make them uniquely qualified to evaluate the licensing documents. If they are prevented from doing so, Satco will be prejudiced in preparing its claims and defenses. Courts are reluctant to limit access to relevant discovery materials in these circumstances. *See, e.g., Alarmax*, 2015 U.S. Dist. LEXIS 179636, at *11-12 (permitting disclosure where defendant is "a small business with no in-house counsel" and its president is "uniquely qualified to understand the information at issue which is integral to the prosecution of this case."); *Merit Industries, Inc. v. Feuer*, 201 F.R.D. 382, 385 (E.D. Pa. 2001) (permitting disclosure of confidential information because "defendants are entitled to participate in the preparation of their own defense"); *Northbrook Dig. LLC v. Vendio Servs.*, 625 F. Supp. 2d 728, 762 (D. Minn. 2008) (denial of access to employees with "substantial experience in a narrow field that cannot be replaced in the open market" would impair the party's ability to prosecute an infringement claim); *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint. Inc.*, 863 F. Supp. 2d 1066,

1091 (D. Colo. 2012) (allowing in-house technical advisor access to AEO material because it was "essential to the ability of the plaintiff to prove their case"); *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 502 (D. Kan. 2007) ("[p]rohibiting [a party's] employees from having access to discovery material in this case could impair its ability to prosecute its claims . . ."); *Medtronic Sofamor Danek, Inc. v. Michelson*, 2002 WL 33003691, at *4 (W.D. Tenn. Jan. 30, 2002) (refusing to deny defendant's access to documents on issues at the heart of the lawsuit); *THK America, Inc.*, 141 F.R.D. 461, 462 (N.D. Ill. 1991) (finding that denying access by plaintiff's president and patent inventor "would unduly 'hamstring' the plaintiff's litigious efforts").

## II. Satco Proposes that the Protective Order Provide a Procedure for the Production of Third Party Documents

### A. Satco's Position

The parties agree that relevant documents containing third party confidential information will be (and, in fact, already are) responsive to discovery requests in this case. For example, Satco has requested that Signify produce all license agreements with third parties which are relevant to at least damages in this case, and Signify has stated that it possess numerous such licenses. However, Signify has also stated that many of these licenses include confidentiality provisions that allegedly would prevent their production in this case, even under the confidentiality provisions contained in the parties' respective proposed protective orders.

The timely production of those relevant license agreements is important for several reasons, including Signify's request that a mediation be held relatively early in the case. Accordingly, Satco has proposed a reasonable and orderly procedure for facilitating the resolution of any disputes concerning the production of those licenses (and any other documents containing confidential third party information). The procedure Satco proposes is taken from the Northern District of California's model protective order.[3] The procedure (a) requires that, in the event a party is subject to an agreement with a third party not to produce a particular document, notice be given to that third party; and (b) requires production of the document if the third party does not seek protection from the Court. This procedure is fair to all parties involved and will provide for the efficient and cost-effective resolution of any such disputes.

### B. Signify's Position

Signify is not refusing to produce third party confidential documents such as existing license agreements as Satco alleges. Signify objects to Satco's proposal because it would require production of third party confidential information on a timeline that would cause Signify to breach existing confidentiality obligations with relevant third parties and would cause Signify to breach existing protective orders with other courts.

Satco's proposal should be rejected because it would order third parties, including third parties that this Court may not have personal jurisdiction over, to take action in this Court. For

---

[3] https://www.cand.uscourts.gov/wp-content/uploads/forms/model-protective-orders/CAND_StandardProtOrd.pdf at ¶ 11.

example, paragraph 22 would order third parties located outside of this judicial district to file for a protective order in this Court in order to protect their confidential information. Other courts have recognized that they "cannot order a non-party to abide by the terms of a protective order or to consent to jurisdiction." *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, No. 07-2319-CM-GLR, 2008 U.S. Dist. LEXIS 11390, at *5 n.2 (D. Kan. Feb. 14, 2008). Signify plans to produce third party confidential information in this case, but Satco's proposed procedure is improper

Additionally, Satco's proposal would force Signify to violate at least one existing protective order. Satco has requested the production of documents that contain third party confidential information from *Certain LED Lighting Devices, LED Power Supplies, and Components Thereof*, Inv. No. 337-TA-1081 (USITC) (the "1081 Investigation"). Ex. 4 at 10, 12 (Request Nos. 6, 9, 17)[4]. The 1081 Investigation has its own protective order that does not allow Signify to produce certain documents in the present case. Ex. 5. Signify is currently seeking permission from all of the parties in the 1081 Investigation to amend the 1081 Investigation protective order so that the requested documents may be produced. Satco's proposal should be rejected because, absent amendment to the 1081 Investigation protective order, Satco's proposal would force Signify to breach an existing protective order.

*/s/Thomas W. Davison*
Thomas W. Davison (admitted pro hac vice)

*Counsel for Plaintiffs Signify North America Corporation and Signify Holding B.V.*

---

[4] Parties to the 1081 Investigation that are competitors of Satco, *e.g.*, Feit, are unlikely to agree to the production of their confidential information to Satco's non-attorney competitive decision makers. Thus, an attorneys' eyes only provision is necessary.