# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


SIGNIFY NORTH AMERICA             *      Case No. 19-CV-6125(SIL)
   CORPORATION, et al.,            *
                                   *
                Plaintiffs,        *      Long Island Federal
                                   *       Courthouse
                                   *      814 Federal Plaza
      v.                           *      Central Islip, NY  11222
                                   *
SATCO PRODUCTS, INC.,              *      November 12, 2020
                                   *
                Defendant.         *
                                   *
* * * * * * * * * * * * * * * * *

       TRANSCRIPT OF CIVIL CAUSE FOR MOTION TO COMPEL
          BEFORE THE HONORABLE STEVEN I. LOCKE
             UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:          ADAM SWAIN, ESQ.
                             THOMAS W. DAVISON, ESQ.
                             Alston and Bird LLP
                             950 F Street NW
                             Washington, DC  20004


For the Defendant:           NICHOLAS A. BROWN, ESQ.
                             4 Embarcadero Center
                             Suite 3000
                             San Francisco, CA  94111

                             JULIE P. BOOKBINDER, ESQ.
                             JOSHUA L. RASKIN, ESQ.
                             Greenberg Traurig LLP
                             200 Park Avenue
                             New York, NY  10166


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

1        (Proceedings commenced at 10:00 a.m.)

2        THE CLERK:  Calling case 19-6125, *Signify North*

3    *America Corp., et al, v. Satco Products, Inc.*

4        Counsel, please state your appearance.

5        MR. SWAIN:  Good morning, Your Honor.  This is Adam

6    Swain on behalf of plaintiff, Signify.  I'm joined by my

7    colleague, Tom Davison of Alston and Bird as well, and I will

8    do the talking for Signify today.

9        THE COURT:  Great.

10        MR. BROWN:  Good morning, Your Honor.  This is Nick

11    Brown for Satco.  With me is Julie Bookbinder and Josh Raskin,

12    and I'll be speaking for Satco.

13        THE COURT:  Very good.  Just give me a second.

14        Okay.  We have -- so according to the docket, we

15    only have docket entry 87, a motion to compel Signify to

16    produce ITC materials pending, but I also know there's docket

17    entry 98, which is a motion to compel directed towards the

18    Gallo system of Signify.  But let's -- let's start with 87.

19        Your response says essentially, Signify has produced

20    everything it has and Satco has everything anyway.  Where are

21    we on this?

22        MR. BROWN:  Your Honor, this is Nick Brown.

23        THE COURT:  Okay.

24        MR. BROWN:  So I think -- I think in fact what the

25    response says, is that Signify doesn't have the documents that

1    the lawyers that represented it in the ITC have, right?  It's

2    -- the argument is that they don't control the documents that

3    their lawyers have, which I think is incorrect and we cited

4    cases of that in the past to you and I can provide them again.

5         I mean, what we're talking about here, just to be

6    clear, is the materials that Signify relied on in the ITC case

7    that ended the day before or maybe the day that this case was

8    filed, in order to try to prove infringement in that case of

9    the same patents by the same products.

10        So they're obviously highly relevant, and for them

11   to say that they don't have them, I think is disingenuous.

12        THE COURT:  But what you're saying is, the issue is

13   not one of relevance, but rather custody or possession or

14   control, is how you're reading it.  Is that what you're

15   saying?

16        MR. BROWN:  That's what I'm saying.

17        THE COURT:  Okay.  Okay.

18        MR. BROWN:  And I -- and I just could go on.  I

19   think what this is really about is there is -- there is some

20   third-party information in a lot of this because Satco was not

21   the only respondent in that case.  There were two other

22   respondents, Fight Electric and Lowes.

23        And I think the -- I believe the problem is that

24   Signify is unwilling to go to those third parties and obtain

25   their permission to redact the material or to produce it

1    without redaction.  And so, I guess what I want to say is at

2    this point, you know, we've been trying to get this highly

3    relevant material for a long time, and I'm not really

4    concerned about who does the redaction or who bears that

5    burden of doing that redaction.  We're willing to do it.

6         So if that's really the obstacle, and we have the

7    courts authority to produce the stuff which we have a copy of,

8    we are just forbidden from using it because of the protective

9    order in the ITC case, then we can do that.

10        And if there's anything that we can't find we can go

11   to signify with a specific request for specific things and get

12   around the problem that way.  Because I just don't want to

13   have an argument about who bears the burden of doing

14   reactions.  It just doesn't see more of it to me.  So that's

15   my first thought.

16        I have one other thought that I -- oh, I'm sorry.

17   Go ahead.

18        THE COURT:  Yeah, I just want to reflect back to

19   make sure I understand your first thought.  So there's a

20   bundle of information that it appears that everybody has

21   agreed is relevant.

22        Is the issue one of possession, custody, or control,

23   or just that there's confidence to information in it that you

24   can't use without a court order?

25        MR. BROWN:  I think it's the latter.  I don't think

1    signify is actually going to be telling you that they don't

2    have control over the record of this case.

3              THE COURT:  Okay.

4              MR. BROWN:  But I can't speak for them.

5              THE COURT:  Okay.  What's your second thought?

6              MR. BROWN:  So my second thought is that there is an

7    ITC rule that permits that transmission of the records from an

8    ITC case to a district court, notwithstanding the fact that

9    it's confidential, and it permits the district court to use

10   those -- that information as appropriate, subject to whatever

11   protective order the district court determines is necessary.

12             So I believe we have a way around this, which is, if

13   we just give them material to the Court and the Court orders

14   it reproduced under the protective order in this case, I think

15   that should solve the problem completely, because it's

16   material -- then there's no need to do any redaction at all

17   because it's all protected by the protective order in this

18   case, and that procedure is authorized by the ITC's rules.  In

19   particular -- I'll give you the citation.  19 CFR, section

20   210.5C.

21             THE COURT:  Okay.

22             MR. BROWN:  And --

23             THE COURT:  Okay.

24             MR. BROWN:  That would avoid all the burden of doing

25   the redaction completely.

1           THE COURT:  Let me ask you a follow-up question to

2     that then.  You said that there were other party besides Satco

3     and Signify in those proceedings, right?

4           MR. BROWN:  Correct.  It was Fight Electric and

5     Lowes.           THE COURT:  Did they have any interest in

6     appearing in this Court to make any objections.  Suppose you

7     want to go route 2, you just mentioned --

8           MR. BROWN:  Right.

9           THE COURT:  -- and move everything here.  Do they

10    have any due process right to come and -- regardless of the

11    Court's decision -- to make their case?  Do they have to be

12    notified first?

13          MR. BROWN:  I am happy to notify them, Your Honor.

14    I don't know the answer about whether they have to.  The way I

15    read the rules is they do not have to, but it would seem

16    prudent to notify them and give them an opportunity to appear.

17          THE COURT:  Okay.  Got it.  Mr. -- is that it for

18    this point, Mr. Brown?

19          MR. BROWN:  Yes, Your Honor.

20          THE COURT:  Okay.

21          MR. BROWN:  Yes.

22          THE COURT:  Mr. Swain, what do you think about that

23    -- any and all of this?

24          MR. SWAIN:  So I think what Mr. Brown has proposed

25    in his, I guess we'd call it the second proposal, is that

1   Greenberg and the Lynn Gartner firm both have the record as

2   well.  They are able and signed on to the protective order and

3   they are able to do the redaction.  That's always been

4   proposing all along.

5            The issue, as we explained in our briefing, is that

6   Alston and Bird, the firm, myself, my colleagues, we are not -

7   - we did not represent any parties in that ITC case and we

8   can't sign on to the protective order.

9            You know, we've spoken with dockets on that point,

10   and once the case is terminated, we can't go in and start

11   looking at the confidential record, and primarily because of

12   the reasons Mr. Brown talked about with, there's third-party

13   confidentiality.

14            So seeing as how there's no dispute that Satco has

15   possession of these materials through its counsel, and that

16   their counsel is in a unique position to redact these

17   materials, we think that that makes the most sense going

18   forward instead of burdening the Court with motion practice.

19   So that's our position on that.

20            With Mr. -- with what Mr. Brown proposes as far as

21   the ITC rules go, admittedly that's the first I've heard of

22   that proposal or that rule, but generally having some ITC

23   experience myself, I'm not sure we can just take -- bundle up

24   the whole record, submitted to the court, because the record

25   is closed already, and then have it -- transmitted to the

1    district court.  Usually there has to be a stay in place

2    already, or there's a lot of other things that have to go into

3    that.

4         Now if he's right and that a less burdensome way of

5    doing it, I'm more than willing to look into that.  But this

6    is -- again this is the first I've heard of it.

7         But you know, so we have two paths we can go down,

8    but I think we all agree the least burdensome -- or the most

9    burdensome would be the one forcing Signify's counsel, meaning

10   Alston and Bird, to go have its former -- Signify's former

11   counsel access the record, go through the redactions and

12   provide versions of the record that may or may not be

13   acceptable to Satco.  Satco is the one seeking information,

14   and they can redact as appropriate and produced in this case.

15   So I think that's the best solution.

16        THE COURT:  Okay.  And so your reaction to proposal

17   2, which I understand you just heard, it wasn't in their

18   letter, is you know, is what?  Is, maybe that's possible;

19   you're not sure but you think there are a lot of hurdles --

20        MR. SWAIN:  No, you know, and my colleague is

21   reminding me it is under -- what Mr. Brown is proposing, and

22   maybe we can discuss it a little bit more, but it is under --

23   it only applies if there was actually a stay under 28 USC

24   1659A, which means if you have an ITC case that's filed,

25   generally at the same time as the district court has filed on

1    the same patents and parties generally, the defendants have a

2    right to stay the district court matter pending the resolution

3    of that ITC case.

4          And so, when that happens, the record can then be --

5    so once the ITC case is over, there is provisions in the rule

6    that allow for the record to be transmitted to the district

7    court, which makes sense because you've stayed the district

8    court case while the ITC hears very similar issues.

9          And we're not arguing that there weren't similar

10    issues in the ITC case here.  The reason I'm bringing this up

11    is, I have -- I am skeptical that what Mr. Brown proposes

12    going through the ITC will work, but I'm willing to -- I'm

13    willing to consider it.

14          But I think at this point, it just makes sense if

15    Satco wants the materials, they have the materials through

16    their counsel.  We're not arguing about possession, custody,

17    or control here.

18          We're arguing about the easiest way to get the

19    information that Satco seeks.  They have it, they can redact

20    it, and they can produce it.

21          THE COURT:  Well, what about that, Mr. Swain, then?

22    Just because -- Mr. Brown, pardon me -- because your second

23    solution, while certainly a surface appeal, I don't know

24    anything about it in terms of logistically what's involved or

25    whether this is the correct posture.  Mr. Swain seems to think

1    it's not.  He may be right.  What do you think?

2         MR. BROWN:  Well, I'm willing to talk about that

3    further with Mr. Swain.  I don't think it much matters because

4    here's what I would suggest.

5         What I would suggest is that you -- you order Satco

6    to produce the ITC record, including all the stuff we're

7    looking for in this case, so that we're doing so with your

8    instruction and there's no argument that we're violating the

9    protective order by doing so, and that you order us, before we

10   do that, to go and approach Fight Electric and Lowes and ask

11   them if they have any objection, or ask them to appear and

12   make an objection if they have one, to having their

13   confidential information from that ITC proceeding produced in

14   this case, subject to the protective order in this case.  That

15   way, if they have an objection they can appear.

16        If they have no objection, we'll just produce

17   everything without the burden of redacting anything and it

18   will all be protected by the protective order in this case.

19        THE COURT:  Okay.  I get it.  That makes sense to

20   me.  It will lengthen this, but I think we're already pretty

21   lengthened as it is.

22        Mr. Swain, what do you think about that?

23        MR. SWAIN:  That sounds like a practical approach,

24   Your Honor.  We would agree with that.

25        THE COURT:  Okay.  Here's what we're going to do

1    then.  I'm going to grant the motion for the reasons set forth

2    on the record.  And, Mr. Brown, I'm going to direct you to --

3    treat it like state court.  Submit a proposed order with

4    either a representation that Mr. Swain agrees with it, or that

5    he doesn't so that I know that I need to wait for you if you

6    have other language, Mr. Swain.  Understand?

7              MR. SWAIN:  Understood, Your Honor.  My only

8    clarification is, you're granting the order but the order is

9    an order seeking an order compelling Signify to produce the

10   materials.

11             THE COURT:  No, it's going to be an order that says,

12   as set forth in the record, you're going to set -- Mr. Brown

13   is going to submit a proposed order addressing any potential

14   third-party concerns.

15             MR. SWAIN:  Okay.  Understood.

16             THE COURT:  I mean, I could also mark it granted in

17   part.  I'm just trying to resolve the motion.  This is more of

18   a housekeeping thing, frankly.

19             MR. SWAIN:  I appreciate that, Your Honor.

20             THE COURT:  All right.  Well, you know, what?  Give

21   me a second.  Let's do this while we're all together before we

22   get to the next step.

23             (Pause)

24             THE COURT:  The protective order in this case is

25   docket entry 44.  Is that right?  Do we know?

1          MR. BROWN:  I can check, Your Honor.  I don't know

2     off the top of my head.

3          THE COURT:  No, that's all right.  I can check too.

4     I just figured it's been cited so many times you've memorized

5     (indiscernible).

6          MR. SWAIN:  It is 40 -- it's 44, Your Honor.

7          THE COURT:  Okay.

8          (Pause)

9          THE COURT:  Okay.  So here's what I put together.

10     Defendant's motion to compel, docket entry 87, is granted in

11     part and denied in part as set forth on the record.

12          Satco will draft a proposed order concerning

13     disclosure of the ITC materials at issue, consistent with the

14     protective order in this case, docket entry 44, allowing for a

15     period of time for third-party objections, production of the

16     materials, and court rulings on those objections.  If there

17     are no objections, the materials will be produced consistent

18     with the protective order.

19          And I'll put a provision for if Signify has

20     objections to the language, you can file something.

21          And I'm going to -- Satco, after meeting and

22     conferring with Signify, will draft an order.

23          MR. BROWN:  Your Honor, may I make one additional

24     request?

25          THE COURT:  Well, yes, but let me finish typing this

1  before I forget something.  But, yes.

2          MR. BROWN:  Okay.  Let me know when you're finished.

3

4      (Pause)

5          THE COURT:  Okay, yes.  Go ahead.

6          MR. BROWN:  So the -- I have some concern that there

7  may be a few documents, and I don't know what they are at this

8  point, that we don't actually have copies of in the record of

9  Satco's -- in Satco's records.

10         If that occurs, I'd like to be able to go to Signify

11 and ask Signify if its attorneys have copies of those

12 documents so that we can get them from them, and then produce

13 them as contemplated by this order.

14         THE COURT:  I'm -- Mr. Swain, do you have any -- I'm

15 okay with that, conceptually, which in general

16 (indiscernible).

17         Mr. Swain, do you have anything on that?

18         MR. SWAIN:  Your Honor, you have my conceptual

19 agreement as well.  I don't know what that universe is --

20         THE COURT:  Yeah.

21         MR. SWAIN:  -- but I'm sure we can cross that bridge

22 when we get to it.

23         MR. BROWN:  I hope the universe doesn't exist, just

24 so everyone is clear.

25         MR. SWAIN:  Me too.

1          THE COURT:  Right.  Hopefully.  I got that.  Okay.

2     So that's docket entry 87.  For some reason, docket entry 98

3     is not listed as a motion on the docket, but we can certainly

4     talk about that I know that wasn't in my order, setting up

5     today's conference.

6          Are you prepared to talk about -- I guess this is

7     part 2 of an earlier motion to compel with respect to license

8     information maintained on Signify's Gallo system.

9          Do you want to talk about that now, or do you need

10    to regroup and we can come back and do it later?

11         MR. BROWN:  I'm prepared to talk about it, Your

12    Honor.  Nick Brown.

13         MR. SWAIN:  Yes, Your Honor.  Yes, Signify is

14    prepared to talk about this as well.

15         THE COURT:  Okay.  I'm not sure if this is a good or

16    a bad thing, but I've read the papers.

17         I guess what I was envisioning from, I think it was

18    July either 9th or the transfer is dated the 13th, is that the

19    30(b)(6) deposition would occur and because Satco had been

20    shooting in the dark a bit with its discovery requests about

21    how information is maintained on the Gallo system, that a

22    deposition would help sort of explain that, so that method of

23    producing the information requested would involve essentially

24    hitting return.  You know what I mean?  That it wouldn't be

25    this burdensome endeavor.

1         And then ancillary to that, there was also

2    discussion of narrowing the number of licenses with respect to

3    which this information is sought.  And I don't have a feel

4    from that -- from either sides' papers.

5         And I should mention one third issue, which is

6    originally the whole -- the remainder of this conversation,

7    because I made some rulings on relevance already, had to do

8    with burden to Signify.

9         And except for a vague discussion of how many hours

10   this takes, there isn't really much of a discussion there, and

11   I'm having trouble, in my mind, drilling down.

12        Typically, when you're looking for discovery, you're

13   talking about restoring information that's stored in a way

14   that you can't use it and it's going to cost $100,000 to get

15   it and that kind of thing, and there's none of that here.

16        So with all of that in mind, Mr. Brown, what do you

17   want to tell me?

18        MR. BROWN:  So I think -- I think you have it pretty

19   much correct, Your Honor.  When we arranged to take this

20   deposition, we didn't know that the information was kept in a

21   database.

22        So we took the deposition, and in the deposition we

23   established that the royalty payment information is kept in

24   the database.  And we thought we established that the royalty

25   information for all the licensees could be produced in ██

1   ████████

2        We've since learned --

3        THE COURT:  Okay.  Yep.

4        MR. BROWN:  And so we -- that was the -- so we

5 thought that had resolved the issue.

6        We've since learned, and without seeing Signify's

7 opposition and some earlier submissions that they've made,

8 that they're contending we misunderstood the deposition; that

9 in fact it's going to take ████████ to produce the payment

10 information from this database.

11        But what we don't have is why that's the case.  So

12 we're being told, well, it's impossible to run a report that

13 pulls out all the payment information from all the licensees

14 in a single report, but we don't know why that's impossible,

15 right?  We don't know why it would take so long to run the

16 report on one licensee.  We don't know what about it is time

17 consuming.

18        And I think to problem solve the situation, we need

19 to have some sort of explanation.  And so, we've attempted to

20 follow up, and so we've -- we've asked for, for example, the

21 database schema, which would set forth how the information is

22 kept in the database, in what tables, so we could see if

23 there's some sort of technical obstacle to abstract --

24 extracting the information from the database that at this

25 point we don't appreciate, but we haven't been given that.

1   We've been asked -- we asked for the deposition of

2 the person who actually ran -- runs reports on the system.  So

3 the deposition we took was of a witness who spoke twice to the

4 person who had actually run the reports, Mr. VanWessel, and I

5 know -- it was -- he was a 30(b)(6) witness who was -- who had

6 prepared himself by speaking twice to this other person.

7   So we suggested, let's take the deposition of this

8 other person so we can learn more about, you know, why it is

9 supposedly so burdensome.  We haven't gotten anywhere with any

10 of this.

11   But we've also suggested, Your Honor, that a third

12 party could go in, extract -- if Signify doesn't want to bear

13 the burden, we'll bear the burden, right?  Send in an

14 independent third-party expert to extract the information from

15 the database.

16   So we're trying to problem solve here, and we've

17 been unable to do so.

18   THE COURT:  Okay.  Let me ask the -- on the second

19 topic, though, narrowing the number of licensees, what

20 happened there?

21   MR. BROWN:  Your Honor, my understanding from the

22 deposition at the outset was that it would take ████████ to

23 run this report for all the licensees.

24   If that's true, we think that happens before we

25 narrow, because ████████ is the minimal pay.  If it's not

1    true, then I think we need to revisit -- I just -- I'd like --

2    basically, Your Honor, I'd like more explanation of what's so

3    difficult here and why it's difficult and what we can get and

4    what we can't so I can try to problem solve around the issue

5    of burden.

6              THE COURT:  All right.  So let me reflect back just

7    to make sure I'm understanding.  Basically, you asked a few

8    questions at the deposition where you were led to believe you

9    could get all this stuff in ████████, and so you didn't probe

10   it anymore because you figured ████████████████████████████

11   ████████████

12             MR. BROWN:  Yes, Your Honor.

13             THE COURT:  Is that fair to say?  Okay.

14             MR. BROWN:  Yes.  Got it.

15             THE COURT:  All right.  Mr. Swain, I want you to

16   respond to this, but let me tell you what my thinking is

17   before you respond.

18             I am disinclined to have anybody from Satco go into

19   the Gallo system and poke around in any form.  That being

20   said, I am extremely concerned about getting to the merits of

21   this and if the 36 -- there was a -- if there -- withdrawn.

22             If there was a misunderstanding about the testimony

23   at the 30(b)(6) deposition, I'm going to permit this issue to

24   be revisited in some form.  In other words, I am

25   troubleshooting here as much as ruling.  Does that -- do you

1    understand what I'm saying, Mr. Swain?

2            MR. SWAIN:  Well, we certainly appreciate it, Your

3    Honor, and we're looking to troubleshoot as well.  I'll let

4    you continue.

5            THE COURT:  Okay.  Yes.  So what I'm thinking about

6    in the back of my mind, is we're going to have a hearing in

7    court and I'm telling Signify, you've got to produce who can

8    answer all reasonable questions about how this works.  Forget

9    30(b)(6) witness.

10           I want to hear from somebody who knows, because when

11   you're both done examining that witness, I am going to ask

12   questions, and I don't want to hear, I don't know,

13   particularly if these people are all over the place and this

14   is being done by video and you have to get somebody else in a

15   different time zone.

16           So with that as a possible solution here, that -- I

17   don't know about you, but I would like to avoid.  What do you

18   think?

19           MR. SWAIN:  Well, we'd certainly like to avoid that

20   as well, Your Honor.  And I think this goes to a central issue

21   to this entire motion, is -- with all due respect to Mr. Brown

22   and his team, they took a deposition of a knowledgeable

23   witness of our database system.

24           Because Mr. Vonnelheim doesn't have ███████████ or

25   however long, to sit around and run a report, he did ask his

1  assigned to go ahead and try to run the reports that they were

2  seeking.

3         The reports that they've been seeking all along is

4  what Mr. Brown has explained in the July 9th hearing, which

5  is, we want to know every licensee.  We want to know how much

6  royalty they paid and what products they're paying on.

7         And so, in preparation for the deposition, Mr.

8  Vonnelheim explored that.  And the answer to that was, to do

9  that for each licensee, the information that Mr. Brown has

10 been seeking, takes a matter between -- would take between

11 ██████████████████████████ to do, and, you know, that's --

12 that's what our testimony is.  That's what we went through and

13 found out, and there was never a complaint from Satco that he

14 was unprepared.

15        So the information that Mr. Vonnelheim talked about

16 that took ████████ to run as we have explained to Satco, is

17 summary information that's basic information on the licensee.

18        Who they are, what their address is, what type of

19 license they have, what their royalty pay -- what their

20 royalty rate is in the license, if it's applicable, and

21 product type.  And product type is really just which of the

22 three generic categories we have of payments for products.  So

23 color changing luminaire, retrofit bulb, or a simple light

24 bulb, you know, that's the product types that could be run in

25 ████████████

1    We don't have -- we have never objected to providing

2 that summary information for ████████  But what Mr. Brown is

3 asking for is something different.

4    He is asking for just all the information that you

5 have for, quote/unquote, royalty payment information, which I

6 assume means all royalties paid, the products, and the stuff

7 that he's asked -- that his partner asked about at Mr.

8 Vonnelheim's deposition.  And that -- the deposition is clear

9 that that would take a very long time to do.

10    And so with that burden in mind that I don't think

11 Satco disagrees with how long it takes to run those reports,

12 we were expecting Satco to say, okay, to get the information

13 that we want, you know, it's going to take, you know, between

14 ████████████████████████  to run each report for each

15 licensee.  Let's get the licensees down and let's serve some

16 revised discovery requests.  And they didn't do either.  They

17 -- they just immediately demanded more information.

18    And I realize, this isn't about what Satco said or

19 did, and we're very much interested in troubleshooting as

20 well, but when we get a motion to compel from Satco that's

21 asking for just all royalty information contained in the

22 database, citing testimony from our witness that does not

23 support their point, and moreover if this is a revised

24 discovery request from Satco, this is the first we've heard of

25 it in a motion to compel, not in any of their existing

1    discovery requests and not in any revised discovery request

2    that they had given us.

3          So it's not a matter of getting more information,

4    Your Honor.  All of the information that is needed to make a

5    decision is here.  If they want to serve a revised discovery

6    request that they need to get down to the comparable number of

7    licenses, they're well within their rights to do so.  In fact,

8    they were ordered to do so and they haven't done so.

9          So again, we want to avoid having more depositions,

10   any inspection of a data base and having Your Honor preside

11   over any of our -- any, you know, independent contractor

12   testifying as to what's in the database and what's not.

13         What we want from Satco is a reasonable reduction of

14   the licenses at issue and a reasonable reduction of their

15   original request that Mr. Vonnelheim said would take, you

16   know, ███████████████████████ to run each.  And that's

17   what we've been repeatedly asking for and we just won't get

18   that from Satco, and that's why we're here.

19         THE COURT:  Okay.  I understand that.  So in

20   response to my original question, because that was a bit of a

21   history recap, but I understand it, is -- your troubleshooting

22   solution is, give us a revised discovery request with a

23   reduced number of licenses.

24         Am I understanding you correctly?

25         MR. SWAIN:  Yes, Your Honor.

1          THE COURT:  Okay.  Mr. Brown?

2          MR. BROWN:  Your Honor, there was no discussion at

3     all in any of what Mr. Swain just said about why it is

4     burdensome or -- in any way to run a report from a database

5     that extracts the information that's in the database.  So

6     there's no explanation as to what's difficult.  There's no

7     explanation about what's time consuming.  There's no

8     explanation about why they can't simply extract from the

9     database, all the payments that were made by each licensee in

10    a single report.

11         THE COURT:  Okay.  Mr. Swain, who runs -- who's the

12    person, whether it's a third-party contractor or otherwise,

13    with knowledge of running the Gallo system of what -- what

14    could be produced quickly and what is burdensome and would

15    require a whole lot of heavy lifting?  Who is that person?

16         MR. SWAIN:  Mr. Vonnelheim.  And if I may say

17    something, Your Honor?  Mr. Brown says there's no explanation

18    of burden.  We would submit that it's plain on its face.  If

19    it takes ███████████████████████ for each licensee to run what

20    they are requesting, then we're talking ██████████████ worth,

21    because they're asking for 1,200 licensees.

22         And so we're looking to get this down.  We're

23    looking to troubleshoot.  And if you need an explanation or a

24    declaration from Mr. Vonnelheim on exactly the cost of that, I

25    assume that would be -- there would be costs involved in that,

1     but we -- our submission is, that is burdensome on its face.

2     And so that's why we want to get this down to a reasonable

3     number.

4           THE COURT:  Okay.

5           MR. SWAIN:  And again, the questions Mr. Brown is

6     having about it, they had every opportunity to ask Mr.

7     Vonnelheim all about it and he was prepared and gave them the

8     explanation.

9           THE COURT:  Okay.  Mr. Brown, are we on the same

10     page that Mr. Vonnelheim seems to be the man with the answers?

11           MR. BROWN:  I -- that was not my impression at all.

12     So my impression was that Mr. Vonnelheim -- from reading -- I

13     didn't take the deposition, so I read the transcript.  My

14     impression was that Mr. Vonnelheim went to a different person

15     because he didn't himself know the answer.

16           But obviously, I don't represent Mr. Vonnelheim.  I

17     have to defer to Signify.

18           THE COURT:  Okay.

19           MR. BROWN:  If they're saying he has actual

20     knowledge, then I can't secondguess that.

21           THE COURT:  Okay.  I've heard enough.  We're putting

22     this down for a hearing and I want to hear from a witness.

23     How much time do you need to get this together?

24           MR. BROWN:  Your Honor, we would like to have the

25     database schema available that we -- so we can use that to

1    question the witness.

2              THE COURT:  No.  Denied.  How much time do you need

3    to get -- I don't care who it is, but it's somebody who's got

4    to be able to answer the questions.  If it's Mr. Vonnelheim,

5    that's fine.  If not, that's fine.  I'm going to leave that up

6    to you to produce the witness, Mr. Swain.

7              MR. SWAIN:  And are you asking how long it would

8    take to get Mr. Vonnelheim --

9              THE COURT:  Yeah.  I don't know where he is.

10             MR. SWAIN:  -- prepared for it?

11             THE COURT:  It may not be the kind of thing where he

12   can just say, yeah, I'm free all week.  Maybe you need to pick

13   a day with some leeway for him to create a hole in his

14   schedule.

15             MR. SWAIN:  Okay.  I have not spoken with Mr.

16   Vonnelheim and if --

17             THE COURT:  (Indiscernible.)

18             MR. SWAIN:  Okay.

19             THE COURT:  I'm sorry?

20             MR. SWAIN:  I have not spoken --

21             THE COURT:  Hello?

22             MR. SWAIN:  Can you hear me, Your Honor?

23             THE COURT:  Yes.  Go ahead.  I'm sorry.  I spoke

24   over you.  Go ahead.

25             MR. SWAIN:  Okay.  I have not spoken with Mr.

1    Vonnelheim in quite some time, in about a month, so I can't

2    say when he's available.

3         Obviously, we don't -- we would rather avoid a

4    hearing on this.  I guess what I don't understand is we're --

5    is why Satco cannot reduce down the number of licenses at

6    issue or target their discovery into what is relevant, and

7    then we can work on getting this down.

8         THE COURT:  That may be the end of this, but I want

9    to hear from this witness.  I'm getting conflicting versions

10   of understanding in what's going on and frankly I'm skeptical

11   of all of it a little bit.  So I want to hear from the

12   witness.

13        MR. SWAIN:  Okay.  So I -- Your Honor, I'm happy to

14   do that.  I will go back to my client today and talk to them.

15   I'm assuming Mr. Vonnelheim is available.  Maybe in the next

16   few weeks we can do that.

17        THE COURT:  That's fine.

18        MR. SWAIN:  I need to -- I need --

19        THE COURT:  I'm going to just order that you circle

20   back with three potential dates and I'll give you the first

21   one I have and we'll also check with Mr. Brown to make sure

22   he's available on those dates.

23        I don't want to go rounds and rounds and rounds on

24   scheduling though.  So maybe the two of you speak first about

25   potential dates once you have a sense of Mr. Vonnelheim's

1    availability.

2              MR. SWAIN:  Understood, Your Honor.

3              THE COURT:  Now, that being said, Mr. Brown, with

4    the understanding that if Mr. Vonnelheim can answer all of the

5    questions of say here's -- essentially, here's why it would

6    take ████ to produce all of this, the result is -- the

7    follow-up question is going to be, well, how long would it be

8    to produce it for 25 or 30 of these, and we may wind up in the

9    same place.  I get that.

10             I'm just a little unsure, frankly, about this entire

11   mechanism, because there's something counterintuitive about

12   the answer you're giving, Mr. Swain.  And that may -- look,

13   maybe that's just the way it's designed, and that's fine.  But

14   it seems strange to me that that's the case.

15             MR. SWAIN:  Well, Your Honor -- Your Honor, if I

16   might submit, that maybe it's because of -- it's really three

17   factors as I understand it.  It's the number of licensees and

18   the number of fields that they're asking.

19             They're asking -- it's not just hit a button and

20   tell me, you know, all the information about that licensee.

21   It's what they're asking.  It's, they're asking for the

22   royalties paid and what products those license -- you know,

23   those specific skus and types of products those are being paid

24   on.

25             And so the --

1          THE COURT:  I get it.  I --

2          MR. SWAIN:  -- it's a tremendous amount of fields --

3          THE COURT:  It has to be (indiscernible) --

4          MR. SWAIN:  -- and a -- yeah.  It's --

5          THE COURT:  I get it.

6          MR. SWAIN:  -- five dimensional in a way.

7          THE COURT:  I get it.  I'm sorry.  I didn't mean to

8     speak over you.  I get all that.  It's -- that still seems

9     strange to me that you can't type in light bulb A, total

10    royalties, or royalties for 2017, or whatever it is, and still

11    get an answer.  That seems strange to me.

12          Now that may be the answer, but then I'd like to

13    hear why it's arranged that way, and I'm -- if he can give an

14    answer as to well, that's because here's how we keep track of

15    it and whatever it is, then fine.  And we may wind up back

16    where you're suggesting, but I'm not going there yet.  I want

17    to hear from the witness.  This whole thing seems a little

18    strange to me.

19          And I understand why Mr. Brown is skeptical.  It may

20    be the way you're saying.  That's fine.  But you two can't

21    resolve it or -- with each other, so we're going to resolve it

22    in the court.

23          MR. SWAIN:  Your Honor, may I say something?  I

24    would ask what Mr. Brown is asking when he asks, we want the

25    royalty payment information contained in the database for each

1    licensee.  What is he asking for?  That's what we still don't

2    understand in this motion to compel.

3            THE COURT:  Okay.  Well, here's what's going to

4    happen.  You're going to talk without me on the phone, and

5    he'll answer to your satisfaction or not, and then we'll

6    produce the witness and have a hearing.

7            MR. BROWN:  Understood, Your Honor.

8            THE COURT:  I mean, and if you have more questions

9    or comments, that's fine.  Just let me finish typing this.

10           MR. SWAIN:  I don't have anything further for

11   Signify, Your Honor.

12           THE COURT:  Okay.  But it's too late because I had

13   to type this.  I'm getting technological (indiscernible) here.

14

15       (Pause)

16           THE COURT:  Where is Mr. Vonnelheim located?

17           MR. BROWN:  Your Honor, he's in Eindhoven in the

18   Netherlands, so either five -- four or five hours ahead of us.

19           THE COURT:  So, video.  Okay.  We can do it by

20   video.  You can indicate that we'll be flexible with his

21   schedule.

22           If we're going to do this by video, we're going to

23   have to think about logistics.  Don't assume the Court has

24   every platform in the world available to it.  That's

25   definitely not the case.

1              We may be able to use Webex, or if you have a system

2      that you propose, parties have been permitted to offer up

3      their own platforms if they can agree on what makes the most

4      sense.  So I'm not going to put that in the order, but just

5      think about that.

6              MR. SWAIN:  Your Honor, may I ask a question?

7              THE COURT:  Yes.

8              MR. SWAIN:  What databases have worked -- I think

9      you said Webex.  Is there -- are there any others that have

10     worked for the Court?

11             THE COURT:  Let's -- if you can take this as a

12     troubleshooting conversation, sort of on the record/off the

13     record.

14             Kristin, how are we doing with the Webex?  Is that

15     our best option?

16             THE CLERK:  Yes, Judge.  I think Webex is our best

17     option.  I --

18             THE COURT:  Okay.  I'm sorry, did I cut you off?

19             THE CLERK:  Yeah.  I'm not so sure about Skype, but

20     I think Webex is --

21             THE COURT:  Okay.

22             THE CLERK:  -- the best.

23             THE COURT:  All right.

24             THE CLERK:  Webex Cisco.

25             THE COURT:  Web -- all right.  Webex Cisco is what

1    we're offering.  I am open to anything as long as it's simple

2    to use because I'm going to have to figure it out.

3                MR. BROWN:  I think Webex will --

4                THE COURT:  And we'll do it --

5                MR. BROWN:  -- probably be it, yeah.  Thank you,

6    Your Honor.

7                THE COURT:  Okay.

8          (Pause)

9                THE COURT:  Okay.  The two of you should also

10   decide, then, if you want to appear personally in court and

11   we're all in one room socially distanced, or apart for the

12   hearing with the witness on video, or do you want to do the

13   entire thing by video with everybody sitting in their

14   respective offices, also fine.

15               Just so you know, the witness should be alone in

16   whatever room he's testifying from, so there's no concern --

17   and I'm not suggesting you would do this.  There have been

18   concerns in other cases about coaching.  Okay?

19               MR. BROWN:  Understood, Your Honor.

20               THE COURT:  Okay.  So how -- how long will it take

21   you to get me some dates?  I'm not going to put it in the

22   order.  Just tell me so I know.

23               MR. SWAIN:  I want to be -- I want to give you a

24   date that we can meet and hopefully come before it.  So I

25   would say by the middle to the end of next week.

1          THE COURT:  Okay.  That's fine.  And, Mr. Brown,

2     you're available for whatever conversation needs to happen to

3     schedule this?

4          MR. BROWN:  Yes, Your Honor.  I have one deposition

5     on one of the days between now and then, but I'm sure we can

6     work around that.

7          THE COURT:  I would think.  Okay.  So that's it.

8     I'm going to wait to hear from you so that we can schedule Mr.

9     Vonnelheim or somebody else's deposition if he direct -- puts

10    you in -- sends you in another direction.  And then we'll

11    figure out what's going on with this Gallo system.

12         But for the sake of clarity, Gallo does not need to

13    be produced to Satco for some kind of examination or a look at

14    the schema or any of that.

15         It's going to be, can we get this information out of

16    it readily?  And if not, how are we going to limit the number

17    of licenses at issue to something that can be managed?

18         Mr. Swain, when is -- let's say it takes, what was

19    it, ▓▓▓▓▓▓▓ per license?  Was that what it -- you said, or

20    between ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓?  Was that it?

21         MR. SWAIN:  Yeah, in that range.  That's what the --

22    that's what Mr. Vonnelheim testified, yes.

23         THE COURT:  Okay.  I want to hear about that and I'm

24    going to want to hear about why.  I mean, that's really what

25    I'm -- I'm having trouble wrapping my brain around, candidly.

1        MR. SWAIN:  Okay.  Understood.

2        THE COURT:  Okay.  Because it's also -- saying

3   between ██████████████████ is different than saying it's

4   impossible or we don't keep one vector -- one sample of --

5   withdrawn.  One piece of that information.  That's why I'm

6   confused.  But okay.  Let's do it.  I will wait to hear from

7   you.

8           Is there anything else?

9        MR. SWAIN:  Just one point of clarification, Your

10  Honor.  When I said the middle to the end of next week, that's

11  giving you some proposed dates, not providing Mr. Vonnelheim.

12  I just wanted to make sure that that was clear.

13       THE COURT:  Yes, that is.  That is.

14       MR. SWAIN:  Okay.

15       THE COURT:  No, I understood that.  By then you will

16  have met and conferred and been able to approach Mr.

17  Vonnelheim about three days when he's available, after which

18  you will offer me those two dates.  Okay?

19       MR. SWAIN:  Understood.

20       MR. BROWN:  Yep.

21       THE COURT:  Okay.  Anything else?

22       MR. BROWN:  Not from Satco.

23       THE COURT:  All right.  Have a good day, everybody.

24       MR. SWAIN:  All right.  Thanks.

25        (Proceedings concluded.)

1          I, CHRISTINE FIORE, court-approved transcriber and

2     certified electronic reporter and transcriber, certify that

3     the foregoing is a correct transcript from the official

4     electronic sound recording of the proceedings in the above-

5     entitled matter.

6

7

8     _____          November 12, 2020

9          Christine Fiore, CERT

10             Transcriber

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25