**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SIGNIFY NORTH AMERICA CORPORATION and SIGNIFY HOLDING B.V. | |
| *Plaintiffs*, | Civil Action No. 2:19-cv-06125-JMA-SIL |
| v. | |
| SATCO PRODUCTS, INC., | JURY TRIAL DEMANDED |
| *Defendant*. | |

## SIGNIFY'S MOTION TO TRANSFER

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     FACTUAL BACKGROUND ....................................................................... 1

III.    LEGAL STANDARD ................................................................................. 3

   A.    Transfer of Venue Under § 1404(a) .................................................... 3

   B.    The First-to-File Rule ......................................................................... 4

IV.    ARGUMENT ............................................................................................. 5

   A.    The First-to-File Rule Does Not Apply ............................................... 5

   B.    "[A]ll Parties Have Consented" to the WDTX ......................................... 6

   C.    The Balance-of-Convenience Factors Favor Transfer .............................. 11

       1.    Factor 1: Plaintiff's choice of forum.................................... 12

       2.    Factors 2, 3, 5, 6: Convenience of the witnesses; location of evidence and operative facts; availability of process to compel attendance of unwilling witnesses ................................................................................ 13

       3.    Factors 4 and 7: Convenience of the parties and relative means of the parties................................................................................. 16

       4.    Factors 8 and 9: The forum's familiarity with the governing law, and trial efficiency and the interests of justice, based on the totality of the circumstances.................................................................... 16

V.     CONCLUSION ......................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adam v. Saenger*,
  303 U.S. 59 (1938)............................................................................................6

*Albert Fadem Trust v. Duke Energy Corp.*,
  214 F. Supp. 2d 341 (S.D.N.Y. 2002)............................................................ *passim*

*Foster Wheeler Energy Corp. v. Matallgesellschaft*,
  No. 91-214, 1993 U.S. Dist. LEXIS 20450 (D. Del. Jan. 4, 1993)..........................................7

*Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*,
  292 F.3d 1363 (Fed. Cir. 2002)..........................................................................7

*General Contracting & Trade Co. v. Interpole, Inc.*,
  940 F.2d 20 (1st Cir. 1991)..........................................................................7, 10

*Grupke v. Linda Lori Sportswear*,
  174 F.R.D. 15 (E.D.N.Y. 1997)..........................................................................7

*Hernandez v. Graebel Van Lines*,
  761 F. Supp. 983 (E.D.N.Y. 1991) ....................................................................16

*In re Hynix*,
  No. 2021-114, 847 F. App'x 847 (Fed. Cir. Feb. 25, 2021) ............................................10, 11

*Lapides v. Board of Regents of University System of Georgia*,
  535 U.S. 613 (U.S. May 13, 2002) .....................................................................8

*Leman v. Krentler-Arnold Hinge Last Co.*,
  284 U.S. 448 (1932)....................................................................................6

*Lyman Steel Corp. v. Ferrostaal Metals Corp.*,
  747 F. Supp. 389 (N.D. Ohio 1990).....................................................................7

*MasterObjects, Inc. v. Amazon.com, Inc.*,
  No. 20 CV 3478 (PKC), 2020 U.S. Dist. LEXIS 191249 (S.D.N.Y. Oct. 15,
  2020) ..............................................................................................15, 16

*Merial Ltd. v. Cipla Ltd.*,
  681 F.3d 1283 (Fed. Cir. 2012).........................................................................5

*Monfried v. Sigma Fin. Corp.*,
    No. 15-CV-2806 (VSB), 2016 U.S. Dist. LEXIS 200279 (S.D.N.Y. June 7,
    2016) ................................................................................................................17

*Neuralstem, Inc. v. StemCells, Inc.*,
    573 F. Supp. 2d 888 (D. Md. 2008) ................................................... *passim*

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
    599 F.3d 102 (2d Cir. 2010).................................................................... 4, 5

*Pausch Med. GmbH v. Pausch LLC*,
    No. 14-cv-1945 (PAC), 2015 U.S. Dist. LEXIS 22344 (S.D.N.Y. Feb. 24,
    2015) ..............................................................................................4, 12, 17

*Satco Prods., Inc. v. Signify N. Am. Corp.*,
    No. 6:21-cv-00146-ADA, Dkt. 1 (W.D. Tex. Feb. 12, 2021)....................... *passim*

*Steve & Barry's*,
    2008 U.S. Dist. LEXIS ................................................................................5

*Steve & Barry's LLC v. Basketball Mktg.*,
    No. 07-cv-5053, 2008 U.S. Dist. LEXIS 141331 (E.D.N.Y. June 10, 2008) ............4

*Trade Well Int'l v. United Cent. Bank*,
    825 F.3d 854 (7th Cir. 2016) ........................................................................7

*William Gluckin & Co., Inc. v. Int'l Plavtex Corp.*,
    407 F.2d 177 (2d Cir. 1969)...........................................................................4

**Statutes**

28 U.S.C. § 1404(a) ................................................................................... *passim*

**Other Authorities**

3 *Moore's Federal Practice - Civil* § 13.111...............................................................7

## TABLE OF ABBREVIATIONS

| Abbreviation | Definition |
|---|---|
| The NY Patents | U.S. Patent No. 6,972,525; U.S. Patent No. 7,038,399; U.S. Patent No. 7,256,554; U.S. Patent No. 7,348,604; U.S. Patent No. 7,352,138; U.S. Patent No. 7,358,929; U.S. Patent No. 8,070,328 |
| The NY Action | This present litigation, captioned *Signify N. Am. Corp. et al. v. Satco Prods., Inc.*, No. 2:19-cv-06125-JMA-SIL (Oct. 30, 2019 E.D.N.Y.) |
| The WDTX Action | The litigation captioned *Satco Prods., Inc. v. Signify N. Am. Corp.*, No. 6:21-cv-00146-ADA, Dkt. 1 (W.D. Tex. Feb. 12, 2021) |
| The Satco Patents | U.S. Patent No. 9,732,930; U.S. Patent No. 10,344,952; U.S. Patent No. 10,533, 712 |
| The Signify TX Patents | U.S. Patent No. 9,709,253; U.S. Patent No. 8,348,479; U.S. Patent No. 8,272,756 |

## TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1 | Transcript for Civil Cause Pre-Motion Conference, dated June 17, 2021 ("EDNY Tr.") |
| 2 | Plaintiff's Opening Brief in Support of Its Partial Motion to Dismiss Counterclaims, filed in *Satco Prods., Inc. v. Signify N. Am. Corp. et al.*, No. 6:21-cv-146-ADA (W.D. Tex. June 7, 2021) ("Satco's WDTX Mtn to Dismiss") |
| 3 | Order Granting Plaintiff's Partial Motion to Dismiss Counterclaims, issued in *Satco Prods., Inc. v. Signify N. Am. Corp. et al.*, No. 6:21-cv-146-ADA (W.D. Tex. Sept. 14, 2021) ("WDTX Order") |
| 4 | Email correspondence from Julie Bookbinder to Darlena Subashi dated Apr. 14, 2021 ("Bookbinder Email") |
| 5 | Email correspondence from Vimal Kapadia to Signify-Satco dated Mar. 19, 2021 ("Kapadia Email") |
| 6 | Defendant Satco Products, Inc.'s Rule 26 Initial Disclosures, dated Feb. 27, 2020 ("Satco's Initial Disclosures") |
| 7 | Declaration of John W. Curran, Ph.D. in Support of Satco Products, Inc.'s Opening Claim Construction Brief, filed in *Satco Prods., Inc. v. Signify N. Am. Corp. et al.*, No. 6:21-cv-146-ADA (W.D. Tex. Oct. 4, 2021) (Dkt. 38-13) |
| 8 | Signify's Identification of Extrinsic Evidence, served in *Satco Prods., Inc. v. Signify N. Am. Corp. et al.*, No. 6:21-cv-146-ADA (W.D. Tex. Sept. 20, 2021) |
| 9 | Declaration of John W. Curran, Ph.D. in Support of Defendant's Responsive Claim Construction Brief, filed on Dec. 21, 2020, at Dkt. 116-3. |
| 10 | Declaration of Michael Gershowitz Regarding Claim Construction, filed on Nov. 20, 2020 at Dkt. 109-5 |
| 11 | Satco Prods., Inc.'s Opening Claim Construction Brief, filed in *Satco Prods., Inc. v. Signify N. Am. Corp. et al.*, No. 6:21-cv-146-ADA (W.D. Tex. Oct. 4, 2021) (Dkt. 38) |
| 12 | Signify North America Corporation and Signify Holding B.V.'s Opening Claim Construction Brief, filed on Nov. 20, 2020 at Dkt. 109 |

v

## I.    INTRODUCTION

Judicial efficiency, efficiencies for the parties, and Satco's course of conduct all counsel in favor of transferring this case to the Western District of Texas ("WDTX").

Satco argues that it has not consented to the claims in this action proceeding in the WDTX, which prohibits a transfer of this case.  But it has consented.  Satco elected to file claims in the WDTX against Signify, despite the fact it could have filed its claims here.  And Satco has also allowed other patent infringement claims to proceed against it in the WDTX Action.  The issue of implied consent has not been addressed in the context of § 1404(a) as currently drafted, but in assessing the issue of consent under other relevant federal statutes, including in the context of personal jurisdiction, courts have not required consent to be express.  Instead, courts have always held that the actions of a party can rise to consent, even if explicit consent has not been given. Section 1404(a) warrants no different outcome.

Further, efficiency compels that the patent disputes between the parties occur in a single forum.  To rule otherwise would needlessly duplicate litigation by allowing two forums to proceed in parallel on infringement claims related to nearly the same set of accused products, the same type of technology, many of the same witnesses, overlapping terms for claim construction, and overlapping discovery. When considered together with the unprecedented case congestion in the EDNY and Satco's choice of the WDTX as a forum, the merits of transfer to the WDTX are clear. By consolidating the case in the WDTX, this Court would conserve both judicial and party resources, and would honor Satco's preferred choice of venue.

## II.    FACTUAL BACKGROUND

**The EDNY Action.**  On October 30, 2019, Signify filed this case (the "NY Action") against Satco alleging infringement of seven patents (the "Signify NY Patents").  Dkt. 1.  On November 25, 2019, Satco filed its Answer and Counterclaims to the Complaint.  Dkt. 10 at 24-

29.

To-date in the NY Action, the parties have not engaged in extensive discovery or substantive motion practice, with the exception of claim construction briefing.  *See* Dkts. 109, 116, 120.  For that claim construction briefing, the Court held a technical tutorial on April 26, 2021 and a portion of the *Markman* hearing on April 27, 2021.  *See* Minute Order dated Apr. 26, 2021; Dkt. 153.  Much of the *Markman* hearing has yet to be completed.

**The WDTX Action.** After the EDNY Action had been pending for more than one year, Satco chose to file a new case in WDTX (instead of this Court), asserting three of its own patents (the "Satco Patents") against Signify. *Satco Prods., Inc. v. Signify N. Am. Corp.*, No. 6:21-cv-00146-ADA, Dkt. 1 (W.D. Tex. Feb. 12, 2021) (the "WDTX Action").

Satco admittedly could have filed these claims in EDNY where the parties were already litigating, but did not.  *See* Ex. 1 (EDNY Tr.) at 4:7-5:2.  As a result, Satco split the parties' patent dispute across two forums.

On May 17, 2021, Signify filed its Answer and 16 counterclaims in the WDTX Action. These 16 counterclaims consist of: (1) claims for declaratory judgment of non-infringement and invalidity of the Satco Patents; (2) claims for infringement of the Signify NY Patents; and (3) claims for infringement of three additional patents (collectively the "Signify TX Patents").  In an effort to consolidate and preserve judicial and party resources, Signify sought to have all patent claims proceed in Satco's own chosen venue: the WDTX.  To that end, Signify asserted the Signify NY Patents (and others) as counterclaims in the WDTX Action. Dkt. 19.  On June 7, 2021, Satco filed a partial motion to dismiss Signify's counterclaims asserting the Signify NY Patents.  Ex. 2 (Satco's WDTX Mtn to Dismiss).

**The EDNY Case Is Stayed.** In the EDNY, a continuation of the *Markman* hearing was

scheduled for June 17, 2021 but was adjourned in view of Signify's pre-motion conference request for Signify's proposed motion to transfer.  *See* Order dated June 8, 2021; Dkt. 158.  The Court held a hearing on June 17, 2021 and, at the agreement of the parties, stayed that action to allow the WDTX Court to rule on Satco's motion to dismiss to avoid "duplication of efforts by the courts and the parties."  Dkt. 158; Ex. 1 (EDNY Tr.) at 7:20-8:15.

**WDTX Grants Satco's Motion to Dismiss Without Prejudice.**  On September 14, 2021, Judge Albright granted Satco's motion to dismiss Signify's counterclaims asserting the Signify NY Patents in the WDTX Action and deferred to this Court to determine if Signify's claims in this case should be transferred to the WDTX.  *See* Ex. 3 (WDTX Order).  The WDTX Order held that the "first-filed EDNY court can, by ruling on the motion to transfer before it, determine where Signify's patent infringement claims should proceed."  Ex. 3 (WDTX Order) at 4.

## III.    LEGAL STANDARD

### A.    Transfer of Venue Under § 1404(a)

Under Section 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  In 2011, the statute was amended to add the latter portion, that transfer may be appropriate "to any district or division to which all parties have consented."  *Id.* at 2011 Amendment Note.  Thus, to be eligible for a transfer under § 1404(a), the threshold question is whether the case "might have been brought" to another district or division or whether "all parties have consented" to another district or division.  *Id.*

Courts have wide discretion in determining which forum is most appropriate in evaluating a transfer under § 1404(a).  *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002).  Courts in the Second Circuit typically evaluate several factors in deciding a

motion to transfer under § 1404(a), including: (1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Albert Fadem Trust*, 214 F. Supp. 2d at 343. "These factors do not comprise an exclusive list, nor are they to be applied in a mechanical or formulaic manner. Rather, they, and any other factors peculiar to the particular case in question, serve as guideposts to the Court's informed exercise of discretion." *Id.* "Courts, therefore, are free to consider other relevant factors such as the trial efficiency achieved by the transfer." *Pausch Med. GmbH v. Pausch LLC*, No. 14-cv-1945 (PAC), 2015 U.S. Dist. LEXIS 22344, at *2-3 (S.D.N.Y. Feb. 24, 2015).

### B.    The First-to-File Rule

"When two actions involving the same parties and issues are ***pending concurrently***, courts in the Second Circuit follow the 'first-filed' rule, whereby 'the court which first has possession of the action decides it.'" *Steve & Barry's LLC v. Basketball Mktg.*, No. 07-cv-5053, 2008 U.S. Dist. LEXIS 141331, at *4-5 (E.D.N.Y. June 10, 2008) (emphasis added). However, courts have broad discretion in determining whether the first-to-file rule applies. *William Gluckin & Co., Inc. v. Int'l Plavtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969). Further, the Second Circuit has held that the second-filed forum is appropriate where (a) the balance of convenience factors favor the second-filed court, or (b) there are other "special circumstances" that apply. *See, e.g.*, *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010). Where "special circumstances are not present, a balancing of the conveniences is necessary." *Id.* at 112-13. "The

'balance of convenience' is determined by considering the same factors 'considered in connection with motions to transfer venue.'" *Id.*

## IV.    ARGUMENT

Because all parties have consented to the WDTX and the balance of convenience factors heavily favor transfer, the Court should transfer the EDNY Action to be consolidated with the WDTX Action.  In considering this transfer request, Signify respectfully submits that time is of the essence—if the EDNY Action is not transferred to the WDTX before the WDTX proceeds with a *Markman* hearing, currently scheduled for December 9, 2021, the two cases will be off track and many of the efficiencies outlined could be diminished or lost.  And while the case could likely be transferred after the *Markman* hearing and still result in significant efficiencies for the parties and Courts, the sooner the case is transferred, the greater the efficiencies will be.

### A.    The First-to-File Rule Does Not Apply

The first-to-file rule does not obviate transfer here.  The first-to-file rule applies where there are two concurrently pending actions asserting the same claims.  *See Steve & Barry's*, 2008 U.S. Dist. LEXIS at *4-5; *see also, e.g.*, *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012) ("The 'first-to-file' rule is a doctrine of judicial comity . . . that generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions.").  Because the WDTX dismissed Signify's counterclaims asserting the Signify NY Patents, Signify's claims are currently pending in the EDNY alone, and the first-to-file rule is inapplicable.

Even if the first-to-file rule does apply, the Court should exercise its discretion to allow the case to proceed in the alleged second-filed court (the WDTX) because, as explained below, Satco has consented to the WDTX, and the balance-of-convenience factors heavily favor proceeding in the WDTX.  Proceeding in the WDTX is the most efficient and common-sense choice for the

courts and the parties.

**B.    "[A]ll Parties Have Consented" to the WDTX**

Section 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought ***or to any district or division to which all parties have consented***." (emphasis added).  28 U.S.C. § 1404(a).  Here, Satco has consented to proceeding in the WDTX through its deliberate and voluntary claims of infringement filed there.

As Satco previously admitted, it could have filed its claims of patent infringement as counterclaims in this case.  *See* Ex. 1 (EDNY Tr.) at 4:7-5:2.  It chose not to and instead specifically chose to file its claims in its preferred venue: the WDTX.  This is consent.  Satco also admits that Signify can assert patent infringement counterclaims against Satco in the WDTX; Signify asserted three new patents against Sacto as counterclaims, and Satco did not seek to dismiss those claims. This is consent.  Satco thus has consented to patent infringement claims being brought against it by Signify in the WDTX Action.

Satco now tries to retract its consent and argues that without its express consent, the case cannot be transferred.  But consent has never been interpreted by the Courts so restrictively or retroactively.  Although this specific fact pattern does not appear to have been addressed in the venue context, in the personal jurisdiction context, it is well-settled law that once a plaintiff has submitted himself to jurisdiction, "there is nothing arbitrary or unreasonable in treating him as being there for all purposes," including counterclaims. *See Adam v. Saenger*, 303 U.S. 59, 67-68 (1938); *see also Leman v. Krentler-Arnold Hinge Last Co.,* 284 U.S. 448, 451 (1932) ("When the respondent brought suit in the Federal District Court . . . it submitted itself to the jurisdiction of the court with respect to all the issues embraced in the suit, including those pertaining to the counterclaim of the defendants . . . .").  Courts have held that a Plaintiff who elects to file suit in a

specific jurisdiction necessarily consents to venue and jurisdiction for any counterclaim brought against it in that action. *See, e.g.*, *Grupke v. Linda Lori Sportswear*, 174 F.R.D. 15, 18-19 (E.D.N.Y. 1997) ("In the vast majority of cases a plaintiff, by virtue of bringing suit, waives venue and personal jurisdiction objections to a defendant's counterclaims."); *Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854,  859 (7th Cir. 2016) ("In general, when a defendant interposes a permissive counterclaim, the plaintiff cannot object that the court lacks personal jurisdiction for purposes of adjudicating the claim."); 3 *Moore's Federal Practice - Civil* § 13.111 (Matthew Bender 3d Ed.) ("A court has personal jurisdiction over a counterdefendant who has submitted to the jurisdiction of the court by bringing suit as the plaintiff.").

Indeed, "many courts have concluded that personal jurisdiction may be based upon an implied consent or waiver when a non-resident files a claim in the forum state that involves the same transaction." *Neuralstem, Inc. v. StemCells, Inc.*, 573 F. Supp. 2d 888, 898 (D. Md. 2008) (citing *Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.,* 292 F.3d 1363, 1372 (Fed. Cir. 2002) (concluding that personal jurisdiction defense waived by filing patent infringement claims against six parties in the Western District of Louisiana, among other activities); *General Contracting & Trade Co. v. Interpole, Inc.,* 940 F.2d 20 (1st Cir. 1991) (holding that a defendant who elected to avail itself of the benefit of a state court's jurisdiction by filing a prior suit against the same party waives its personal jurisdiction defense in all actions related to the claim and arising out of the same nucleus of operative facts for which it originally invoked the court's jurisdiction); *Lyman Steel Corp. v. Ferrostaal Metals Corp.,* 747 F. Supp. 389, 397 (N.D. Ohio 1990) ("Voluntarily filing a lawsuit . . . where the facts similarly arise from the same series of events as another [prior] lawsuit can be deemed another indication of purposeful availment of the forum."); *Foster Wheeler Energy Corp. v. Matallgesellschaft,* No. 91-214, 1993 U.S. Dist. LEXIS

20450 (D. Del. Jan. 4, 1993) (patent action where defendant subjected itself to personal jurisdiction in Delaware in a second suit by virtue of having previously filed its own suit in Delaware); *Neuralstem*, 573 F. Supp. 2d at 899 n.13 (in a pre-*TC Heartland* case, holding that because personal jurisdiction was proper, so was venue)). Section 1404(a) does not warrant any different treatment.

For example, in *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613 (U.S. May 13, 2002), in the sovereign-immunity context, the Supreme Court addressed whether affirmative acts to proceed in a specific jurisdiction rise to the level of consent. In that case, Lapides brought suit in state court against the state of Georgia, alleging violations of state and federal law. The state of Georgia removed the case to federal court, and then moved to dismiss the case, arguing that it was immune from suit in federal court under the Eleventh Amendment. The Supreme Court noted that by removing the case, Georgia "*voluntarily* invoked the jurisdiction of the federal court," *Id.* at 622 (emphasis in original), and held that "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter . . . in a federal forum." *Id.* at 624. Just as the invocation of federal jurisdiction can waive Eleventh Amendment immunity, Satco's election (1) to file suit in the WDTX, and (2) to allow counterclaims from Signify regarding the same products to proceed against it, constitutes consent to proceeding in that venue on the NY infringement claims. This is especially true given the overlap in witnesses, accused products, and subject matter of the patents. *See infra* at Section IV.C.2.

The facts here are also similar to the facts in *Neuralstem*, where the U.S. District Court of Maryland determined that a party had consented for purposes of personal jurisdiction because the party had previously availed itself of the forum. *Neuralstem*, 573 F. Supp. 2d at 897-98. In

*Neuralstem*, the patentee, StemCells, had previously filed an infringement suit against Neuralstem in the District of Maryland in 2006. *Id.* at 890. In 2008, Neuralstem filed a declaratory judgment action in the District of Maryland on patents that were related to the patents asserted in the 2006 case. *Id.* at 890-91. StemCells argued that the District of Maryland had no personal jurisdiction over it for the 2008 case. *Id.* at 896.

The District of Maryland disagreed, holding that StemCells consented to the jurisdiction of the court by "purposefully avail[ing] itself of the privileges and benefits of this forum by voluntarily filing the 2006 Maryland action" that was "significantly intertwined" with the 2008 case. The 2006 and 2008 cases posed substantially overlapping technical issues, where the allegedly infringing activity was the same in both cases, and "both cases involve[d] overlapping theories of infringement, non-infringement, and invalidity." *Id.* at 897. The Court went on to comment that "***[a]ny contrary ruling would simply 'produce an unjust symmetry,'*** as it would allow StemCells to 'enjoy the full benefits of access to [Maryland's] courts [as] plaintiff, while nonetheless retaining immunity from the courts' authority [as] defendant in respect to claims asserted by the very party it was suing" in Maryland. *Id.* at 898 (emphasis added). The Court concluded, "[h]aving ignited the spark to related litigation in this forum, StemCells cannot now attempt to determine the direction of the fire and re-direct it to the forum of its choice." *Id.* The *Neuralstem* Court further held that venue was proper where StemCells had objected based on a lack of personal jurisdiction. *Id.* at 899 n.13.

The same circumstances exist here. Satco voluntarily filed the WDTX Action, which involves the same parties and the same subject matter—LED lighting—and there is significant overlap between the cases, including the type of technology at issue, the accused products, the claim terms for construction, and the witnesses. *See infra* at Section IV.C.2. These actions by

Satco rise to the level of consent.  Satco "purposefully availed itself of the privileges and benefits of [the WDTX] by voluntarily filing" the WDTX Action.  *Id.*  For Satco to be able to argue that its filing in WDTX does not constitute consent would "'produce an unjust asymmetry,' as it would allow [Satco] to 'enjoy the full benefits of access to [WDTX] as plaintiff, while nonetheless retaining immunity from the courts' authority as defendant in respect to the claims asserted by the very party it was suing in WDTX."  *Id.* (quoting *Interpole*, 940 F.2d at 23).  Satco's actions constitute consent under § 1404(a).

In its letter briefing, Satco relied on two cases to argue that consent under § 1404(a) must be explicit.  The first, *Pecorino v. Vutec Corp.*, is no longer relevant law.  That case was analyzing transfer under § 1404(a) before the law was amended to add the "consent" language.  Specifically, at that time § 1404(a) read "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 934 F. Supp. 2d 422, at 428-29 (E.D.N.Y. 2011).  Section 1404(a) was subsequently amended to add "or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a) at 2011 Amendment Note.  Thus, the *Pecorino* decision is irrelevant to whether a case can be transferred under the current § 1404(a) by implied or constructive consent.

Next, Satco points to *In re Hynix*, No. 2021-114, 847 F. App'x 847 (Fed. Cir. Feb. 25, 2021).  This case is also distinguishable for at least three reasons.

First, there, **the Defendant**, SK Hynix sought to transfer the patent action brought against it to California, where the Plaintiff had previously filed different cases against SK Hynix.  Here, it is **the Plaintiff** who seeks to transfer a related case in the interest of clear efficiencies to a jurisdiction where **Satco elected** to file suit.  In other words, *In re Hynix* presented a more typical transfer scenario where the defendant seeks to transfer the case from the plaintiff's elected forum.

Here, on the other hand, it is Signify, the plaintiff, that voluntarily seeks to transfer this case to be consolidated with Satco's, the defendant's elected forum.

Second, the *SK Hynix* case presented stale evidence of consent. The cases in California that SK Hynix said justified transfer were filed three and four years before the case for which SK Hynix sought transfer. The cases had been stayed and many of the asserted patents invalidated through patentability challenges in front of the patent office. *Id.* at 849. As such, those earlier cases were essentially over and "inactive" at the time of the requested transfer, significantly reducing their relevance to any inference of consent at the time of transfer. *Id.* Here, on the other hand, Satco elected to file its suit in the middle of this case, which was actively being litigated.

Third, with regard to the issue of consent under § 1404(a), the Federal Circuit merely held that it saw "no basis for disturbing, on this mandamus petition, the district court's conclusion" on that point because SK Hynix "identified no legal authority establishing a clear legal right to an inference of consent as to this action from Netlist's conduct regarding other actions … ." *Id.* at 853. In other words, the Federal Circuit did not affirmatively say that an inference of consent was not permitted under § 1404(a), but rather that SK Hynix had not established consent based on the facts, and that in the limited context of mandamus, the Federal Circuit would not disturb that conclusion. The facts here, and precedent on the notion of consent, including from the United States Supreme Court, lead to the conclusion that Satco has consented to proceeding in WDTX.

### C. The Balance-of-Convenience Factors Favor Transfer

The balance of convenience factors heavily favor transfer in the interests of efficiency and judicial economy for the Courts, the witnesses, and the parties. There is no dispute that Signify's counterclaims on the Signify TX Patents will go forth in the WDTX. Indeed, Satco has no objection to those claims proceeding in the WDTX. The only dispute is whether Signify's claims on the Signify NY Patents should also be adjudicated in Texas through transfer to be consolidated

11

with the Signify TX Patents.

The convenience factors overwhelmingly support doing so.  There is substantial overlap of patented technology, accused products, and witnesses between both cases.  There is no dispute that the Signify TX Patents and Signify NY Patents involve similar LED lighting technology, including the design, construction, and functionality of LED luminaire products.  *See supra* Section II. Moreover, nearly 90% of the products accused in the EDNY Action are also accused in the WDTX Action, many regarding the same functionality and features.  Expectedly, this means a substantial overlap in witnesses for both parties given the overlap of relevant products and technology between the cases.

To reject transfer would present a burden on both courts.  If this case is not transferred to the WDTX, the parties will needlessly engage in substantially duplicative discovery.  The same witnesses will be deposed twice—including technical witnesses, financial witnesses, corporate representatives, expert witnesses, and third-party witnesses—the same documents will be produced, and certain common claim construction issues will be analyzed by two separate courts.

Because the two cases "share [] common central issue[s]," "[t]ransferring the action to the [WDTX] could, therefore, lead to consolidation with Defendant's pending suit, presenting clear efficiencies. Efficiency and common sense heavily favor transferring the action to" the WDTX. *See Pausch Med.*, 2015 U.S. Dist. LEXIS 22344, at *6.

### 1.    Factor 1: Plaintiff's choice of forum

Factor 1 heavily favors transfer. A plaintiff's choice of forum is given great weight in a § 1404(a) analysis. *Albert Fadem Trust*, 214 F. Supp. 2d at 343.  "[C]ourts have typically accorded substantial weight to . . . plaintiff's choice of forum, for that very choice reflects one side's assessment of the balance of relevant factors, and since the law permits the suit to be brought where plaintiff has chosen to bring it, that choice should not be lightly overridden." *Id.*

Unlike the typical § 1404(a) analysis, here, the **Plaintiff** Signify seeks transfer. And as explained *supra*, Satco has consented to the WDTX for purposes of resolving the "significantly intertwined" disputes between the parties. *See Neuralstem*, 573 F. Supp. 2d at 898.

Because (i) Signify is the Plaintiff in the EDNY Action and is willing to proceed in the WDTX and (ii) Satco affirmatively chose the WDTX as Plaintiff, transfer to the WDTX is consistent with both parties' choice of forum.

2. **Factors 2, 3, 5, 6: Convenience of the witnesses; location of evidence and operative facts; availability of process to compel attendance of unwilling witnesses**

Factors 2, 3, 5, and 6[1] weigh heavily in favor of proceeding in WDTX. Convenience of the witnesses and the similarity of evidence across the two actions heavily supports transfer.

The EDNY Action and the WDTX Action involve nearly identical technical issues. Of the **144 products** accused of infringing Signify's TX Patents, **all but 17**[2] of those same products are accused in the EDNY Action. Decl. of D. Subashi, ¶ 14. Given the nearly identical technical scope, the damages discovery in each case related to product sales will also be substantially similar. Indeed, it is not an overstatement to say that, if the EDNY Action is **not** transferred, a substantial amount of work from the WDTX Action will essentially be re-done in the EDNY Action.[3]

Transfer is substantially more convenient for the witnesses. If the EDNY Action and the WDTX Action proceed in parallel, Satco's technical witnesses will need to be deposed in both the

---

[1] Factor 2 is "the convenience of the witnesses." Factor 3 is "the location of the relevant documents and relative ease of access to sources of proof." Factor 5 is "the locus of operative facts." Factor 6 is "the availability of process to compel the attendance of unwilling witnesses." *Albert Fadem*, 214 F. Supp. 2d at 343.

[2] Further, Signify submits that at least 11 of these products infringe the Signify NY Patents as well and that Signify intends to amend its infringement contentions in the EDNY Action to reflect the same. Overall, then, there are only 6 uniquely accused products in the WDTX Action.

[3] This assumes that the WDTX Action will proceed on a faster timeline to trial than the EDNY Action, as is discussed more *infra* Section IV.C.4.

EDNY Action and the WDTX Action.  Specifically, earlier this year in the EDNY Action, Satco identified the following individuals as being "involved with selling accused products, and likely to have related emails":

- Brian Brandes: Senior Vice President, Product Development
- Chris Siegal: Vice President, Product Development
- David Wild: Vice President/Luminaires
- Adam Chernoff: Product Manager/Lamps
- Shawn Scheer, Product Manager/Commercial Luminaires

Ex. 4 (Bookbinder Email); Ex. 5 (Kapadia Email); Ex. 6 (Satco's Initial Disclosures).  If the cases proceed in parallel, these individuals would be deposed twice.  Further, Mr. Brandes and Mr. Siegal are also listed on Satco's initial disclosures in this action as having knowledge regarding "sales and marketing of Satco products."  Ex. 6 (Satco's Initial Disclosures).  Therefore, it is likely that Mr. Brandes and Mr. Siegal have information relevant to damages and would, for that additional reason, be deposed twice.  The same is true for third-party manufacturers and distributors, which, again, will be the same across the two actions given the nearly identical accused products.

Similarly, the parties' expert witnesses will likely be the same across both actions.  For example, in the WDTX Action, the parties identified the same claim construction experts as they did in the *Markman* proceedings in the EDNY Action.  *Compare* Ex. 7 (Satco relying on Dr. Curran as an expert in the WDTX Action); Ex. 8 (Signify identifying[4] Mr. Gershowitz as an expert in the WDTX Action) *with* Ex. 9 (Satco relying upon Dr. Curran's opinions in the EDNY Action); Ex. 10 (Signify relying upon Mr. Gershowitz's opinions in the EDNY Action).  Satco has even identified some of the ***exact same terms*** for construction in the Signify TX Patents as the terms that are at issue in the claim construction proceedings for the Signify NY Patents.  *Compare* Ex. 11 (Satco briefing "integrally formed" and "heat sink" as terms for construction in the WDTX)

---

[4] Signify has not yet submitted its claim construction brief in the WDTX Action.

*with* Ex. 12 (Signify briefing "integrally formed" and "heat sink" as terms for construction in the EDNY).

There is thus significant overlap between the subject matter of the two cases and witnesses who would need to be called in both actions, including at least (1) Satco witnesses with knowledge of the products, (2) financial witnesses on behalf of both Satco and Signify, (3) corporate representatives on behalf both Satco and Signify; (4) third-party witnesses; and (5) expert witnesses. If the two cases proceed in parallel, these overlapping witnesses would need to appear in *both* New York and Texas. Instead, it is undeniably more convenient for all of Signify's claims to proceed together in the WDTX Action so that all witnesses can be called to a single location, a single time. Signify is not aware of any relevant third-party witnesses that would be subject to the subpoena power of EDNY but could not be subpoenaed in WDTX.

Regarding documents, for the same reasons described above, much of the same discovery will be produced in the WDTX Action as will be produced in the EDNY Action. Where Signify accuses the exact same products in the WDTX Action as it does in the EDNY Action, it is quite likely that Satco will produce the ***exact same*** documents. And, the same discovery from third-party manufacturers and distributors will need to be re-produced in the later action. Similarly, the damages discovery between the two case is likely to be similar. Overall, given the substantial similarity in subject matter between the EDNY Action and the WDTX Action, it is likely that much of the same discovery will be produced in either case. At the very least, because the relevant documents are stored electronically, the factor addressing the location of the documents is at least neutral. *MasterObjects, Inc. v. Amazon.com, Inc.*, No. 20 CV 3478 (PKC), 2020 U.S. Dist. LEXIS 191249, at *8-9 (S.D.N.Y. Oct. 15, 2020) ("In the era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly.").

In sum, Factors 2, 3, 5, and 6 strongly support transfer to streamline the proceedings and reduce burden on the witnesses where the two actions involve substantially overlapping subject matter.

### 3.    Factors 4 and 7: Convenience of the parties and relative means of the parties

Factors 4 and 7[5] support transfer.  Given that Satco chose to initiate a case against Signify in WDTX, Satco has already agreed that WDTX is a convenient forum and has waived any argument disputing the same.  Satco's decision to choose the WDTX "is more consistent with forum shopping than concerns about convenience of the parties or witnesses or docket conditions." *See MasterObjects, Inc. v. Amazon.com, Inc.*, No. 20 CV 3478 (PKC), 2020 U.S. Dist. LEXIS 191249, at * (S.D.N.Y. Oct. 15, 2020).  Further, as explained above, given the overlapping subject matter between the two actions, it will be collectively more convenient for the parties to litigate their disputes in one forum.

With respect to the relative means of the parties, Signify and Satco are both sophisticated parties that will not be unduly burdened by transfer.  *See Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 989 (E.D.N.Y. 1991) (according factor little or no significance absent showing of disparity of means between corporate defendant and individual plaintiff).  Factors 4 and 7 support transfer.

### 4.    Factors 8 and 9: The forum's familiarity with the governing law, and trial efficiency and the interests of justice, based on the totality of the circumstances

Factors 8 and 9[6] heavily support transfer.  Because the two cases "share [] common central

---

[5] Factor 4 is "the convenience of the parties."  Factor 7 is "the relative means of the parties." *Albert Fadem*, 214 F. Supp. 2d at 343.

[6] Factor 8 is "the forum's familiarity with the governing law."  Factor 9 is "trial efficiency and the interests of justice, based on the totality of the circumstances."  *Albert Fadem*, 214 F. Supp. 2d at 343.

issue[s]," "[t]ransferring the action to the [WDTX] could, therefore, lead to consolidation with Defendant's pending suit, presenting clear efficiencies. Efficiency and common sense heavily favor transferring the action to" the WDTX. *Pausch Med.*, 2015 U.S. Dist. LEXIS 22344, at \*6. Transferring the EDNY Action will allow the WDTX to consolidate the two actions, ensuring that work is not duplicated by the two courts or the parties. Further, if the two actions are consolidated, Signify will agree that any and all discovery, discovery rulings, and *Markman* briefing or reports and recommendations may be transferred to the WDTX Action.

Judicial economy also weighs in favor of proceeding in WDTX because EDNY is facing a judicial crisis due to judicial vacancies and the impact of the COVID-19 pandemic on the Court's docket. *Monfried v. Sigma Fin. Corp.*, No. 15-CV-2806 (VSB), 2016 U.S. Dist. LEXIS 200279, at \*15 (S.D.N.Y. June 7, 2016) ("Although certainly not decisive, docket conditions or calendar congestion of both the transferee and transferor districts is a proper factor and is accorded some weight."). EDNY is in a state of judicial crisis due to substantial and unprecedented court congestion.

The statistics on EDNY's judicial crisis are daunting. There are currently four judicial vacancies in EDNY, including two "judicial emergencies," with no pending nominees.[7] This means that there are 28.8 "vacant judgeship months" in EDNY, compared to 1.1 vacant judgeship months in WDTX.[8] The difference in median time from filing to trial in civil cases between the two forums is already substantial: 19.1 months in WDTX, compared to 38.8 months in EDNY.[9]

---

[7] https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies; https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies.

[8] U.S. District Courts—Federal Court Management Statistics–Profiles—During the 12-Month Periods Ending March 31, 2016 Through 2021 (March 31, 2021), available at https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2021/03/31-1.

[9] *Id.*

The overburden on the judges in EDNY will only be exacerbated by the fact that the COVID-19 pandemic has affected trial proceedings in EDNY to a greater extent than in WDTX.[10]

Finally, while both forums are familiar with the federal law of patent infringement, the WDTX is overall one of the most experienced patent dockets in the country.[11]

Therefore, Factors 8 and 9 regarding the forum's familiarity with the governing law and trial efficiency favor transfer.

* * * * *

For the foregoing reasons, the balance of convenience factors favor transfer in the interests of efficiency and judicial economy for the Courts, the witnesses, and the parties.

## V.      CONCLUSION

For the foregoing reasons, Signify respectfully requests that the Court transfer this action to the WDTX.

---

[10] *Id.* (showing that EDNY held five trials per judgeship between April 2020 and March 2021, while WDTX held fourteen trials per judgeship during the same period).

[11] *See also https://www.uscourts.gov/news/2020/02/13/just-facts-intellectual-property-cases-patent-copyright-and-trademark* (explaining that Texas had the highest number of patent filings from 1996-2018, with 20 percent of the national caseload); https://www.law360.com/articles/1400052/wdtx-now-has-25-of-all-us-patent-cases (explaining that as of July 2, 2021, 25% of all 2021 patent cases at that time were filed in the WDTX).

Respectfully submitted, this 6th day of October, 2021.

Respectfully submitted,

*/s/ Natalie C. Clayton*
Natalie C. Clayton (4409538)
Darlena Subashi (admitted *pro hac vice*)
Ravi Shah (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
90 Park Avenue
15th Floor
New York, NY 10016-1387
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
Email: Natalie.Clayton@alston.com
Email: Darlena.Subashi@alston.com
Email: Ravi.Shah@alston.com

Adam D. Swain (*admitted pro hac vice*)
Thomas W. Davison (*admitted pro hac vice*)
Emily M. Grand (*admitted pro hac vice*)
**ALSTON & BIRD LLP**
950 F. Street, NW
Washington, D.C. 20004-1404
Telephone: (202) 239-3300
Facsimile: (202) 239-3333
Email: Adam.Swain@alston.com
Email: Tom.Davison@alston.com
Email: Emily.Grand@alston.com

John D. Haynes (*admitted pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Email: John.Haynes@alston.com

***Counsel for Plaintiffs Signify North America Corporation and Signify Holding B.V.***

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of October, 2021, I served a copy of the foregoing document on all counsel of record via e-mail.

/s/ *Natalie C. Clayton*
Natalie C. Clayton